COMMONWEALTH *vs.* JAMES R. McDUFFEE.

Suffolk.    November 15, 1978. — March 5, 1979.

Present: KEVILLE, GOODMAN, & BROWN, JJ.

*Practice, Criminal*, Continuance, Fair trial, Sentence. *Privacy. Insurance*, Broker. *Perjury. Law or Fact.*

In a perjury case, the judge did not abuse his discretion in denying the defendant's motion for a continuance, made on the day before the beginning of trial on the ground of prejudicial pretrial publicity, where the judge questioned the jury before they were sworn regarding any exposure they may have had to any pretrial publicity and none of the jurors admitted having heard or seen anything on radio or television or having read anything in the newspapers about the defendant. [132-133]

Requiring an applicant for renewal of an insurance broker's license to disclose any criminal proceedings against him during the past year did not violate any right of privacy protected by the Fourteenth Amendment to the United States Constitution. [133-134]

---

Inquiry into the criminal history of an applicant for renewal of an insurance broker's license did not violate his right to privacy under G. L. c. 214, § 1B. [134]

General Laws c. 6, §§ 168-178, restricting dissemination of criminal offender record information, did not bar the Commissioner of Insurance from asking an applicant for renewal of an insurance broker's license whether there had been any criminal proceedings against him during the past year. [134-135]

Any policy of ensuring confidentiality and nondisclosure of records concerning past criminal proceedings not resulting in convictions embodied in G. L. c. 276, § 100C, did not preclude the Commissioner of Insurance from asking an applicant for renewal of an insurance broker's license to disclose whether he was under indictment when the application was filed. [135]

An application for renewal of an insurance broker's license does not constitute "an application for employment" within the meaning of G. L. c. 151B, § 4(9). [135]

A false statement made by an applicant for renewal of an insurance broker's license in response to a question about his criminal record was material within the meaning of G. L. c. 268, § 1A. [135-136]

An answer by an applicant for renewal of an insurance broker's license in response to a question about his criminal record on an application form provided by the Commissioner of Insurance was a statement required by law within the meaning of G. L. c. 268, § 1A. [137]

The Commissioner of Insurance had the authority to require that statements on an application for renewal of an insurance broker's license be made under the penalties of perjury. [138]

At the trial of an indictment for perjury, the judge did not err in ruling that statements made by the defendant in his application for renewal of an insurance broker's license were material as matter of law. [138-139]

There was no error in the denial of a motion for revision of sentence made by a defendant convicted of perjury who was sentenced to serve one year in jail followed by three and one-half years' probation. [139]

INDICTMENTS found and returned in the Superior Court on June 21, 1977.

The cases were tried before *Tisdale*, J.

*Herbert D. Lewis* (*Howard J. Alperin* with him) for the defendant.

*Paul W. Shaw*, Assistant Attorney General, for the Commonwealth.

Commonwealth v. McDuffee.

BROWN, J. The defendant appeals under the provisions of G. L. c. 278, §§ 33A-33G, from convictions on two indictments charging perjury (see G. L. c. 268, § 1A). The defendant argues on appeal that the trial judge erred in (1) denying his motion for a continuance; (2) denying his motions to dismiss and for a directed verdict; (3) withdrawing matters from the jury's consideration; and (4) denying his motion to revise and revoke the sentences imposed.

We conclude that there was no error. We briefly summarize the evidence presented at trial by the prosecution before turning to the defendant's assignments of error.

The defendant, James R. McDuffee, has been doing business as the James R. McDuffee Insurance Agency, Inc., since 1963. In 1974 and 1975 the defendant submitted to the Division of Insurance of the Department of Banking and Insurance an application for the renewal of his insurance broker's license. The renewal procedure consisted of completing and filing with the Division of Insurance a form, supplied by the Commissioner of Insurance (commissioner), which the applicant was required to sign under the pains and penalties of perjury. Question number seven on the renewal application form asked whether the applicant had "within the past year been convicted of, or arrested or prosecuted for, any crime or offense against the laws of this or any other state or country, or pleaded nolo to any indictment or complaint for any such crime or offense or been placed upon probation therefor, or is there pending against you any indictment, complaint or proceeding for a violation of such laws?" The defendant's applications filed for the years 1974 and 1975 included a negative response to this question, while, in fact, the defendant was under indictment for larceny and fraudulent procurement of insurance premiums. At the end of each application the defendant signed his name in the space provided therefor which was immediately below the phrase: "I hereby verify the foregoing statements and answers and declare that they were made under the penalties of perjury."

1. The defendant argues that the trial judge erred in
denying his motion for a continuance of the trial because
of the substantial likelihood that prospective jurors had
been prejudiced by pretrial adverse publicity.

On the day prior to the beginning of trial the defendant
moved for a continuance, claiming that a televised news
item, broadcast ten days before the scheduled opening of
trial, referred to the defendant as a principal of a corpora-
tion allegedly involved in improprieties regarding the
awarding of contracts by the real property department of
the city of Boston for the operation of the city's municipal
parking garages. The defendant claimed his picture was
shown during the broadcast and that he was referred to
as being under indictment for perjury involving potential
insurance frauds. He also claims that he was identified as
the principal of the Century Fire and Marine Insurance
Corporation which was said to have been in receivership
for allegedly writing illegal bonds. The defendant further
complained that on two subsequent days there were tele-
vision broadcasts which referred to the alleged impro-
prieties involving the municipal garages. It does not ap-
pear that the defendant's picture was used or that he was
referred to by name in these later broadcasts.

Whether a jury has been prejudiced by pretrial publici-
ty is a question for the trial judge, who, in such circum-
stances, has discretion in deciding whether to allow a
motion for a continuance. *Commonwealth v. Jackson,* 376
Mass. 790, 799 (1978). See *Commonwealth v. Eagan,* 357
Mass. 585, 588-589 (1970); *Commonwealth v. Stanley,* 363
Mass. 102, 104-105 (1973). Following the empanelling of
the jurors and prior to their being sworn the judge, in
detailed language directed to the publicity issue,
addressed a series of questions to them regarding any
exposure they may have had to any pretrial publicity. Cf.
G. L. c. 234, § 28, as amended through St. 1975, c. 335;
*Commonwealth v. Dickerson,* 372 Mass. 783, 792-793
(1977). When asked if they had heard or seen anything on
radio or television or had read anything in the newspa-

pers regarding the defendant, none of the jurors responded. See *Commonwealth* v. *Vitello*, 367 Mass. 224, 236-237 (1975). The judge received no response to any of the other questions he directed to the panel relative to the issue of pretrial publicity. See *Commonwealth* v. *Gilday*, 367 Mass. 474, 492 (1975). These actions taken by the judge adequately protected the defendant's right to a fair trial before "an impartial jury free from outside influences." *Sheppard* v. *Maxwell*, 384 U.S. 333, 362 (1966). In light of the steps taken by the judge we find no indication that the defendant was tried before a biased jury. We thus conclude that the defendant has not met his burden of showing that he was denied a fair trial by the pretrial publicity. *Commonwealth* v. *Nolin*, 373 Mass. 45, 49 (1977).

2. (a) The defendant assigns as error the judge's denial of his motion to dismiss and his motion for a directed verdict. He claims it was an unlawful breach of his right to privacy for the Division of Insurance to inquire into his criminal background. He thus concludes that as he could not properly be asked about it, he cannot be found guilty of perjury for falsely answering the question. Nothing in the information requested of the defendant is in conflict with the privacy rights the Supreme Court has recognized under the Bill of Rights of the Federal Constitution. Compare *Opinion of the Justices*, 375 Mass. 795, 806 (1978). The defendant's reliance on such cases as *Griswold* v. *Connecticut*, 381 U.S. 479 (1965), *Eisenstadt* v. *Baird*, 405 U.S. 438 (1972), and *Roe* v. *Wade*, 410 U.S. 113 (1973), is misplaced. Those cases provided protection against unwarranted governmental intrusion into such personal and private matters as marriage, procreation, contraception, and family relationships. Fourteenth Amendment protection of personal privacy has been limited to those rights which have been categorized as "fundamental" or "implicit in the concept of ordered liberty". *Paul* v. *Davis*, 424 U.S. 693, 713 (1976). *Hastings & Sons Publishing Co.* v. *City Treasurer of Lynn*, 374 Mass. 812, 819 (1978). The defendant's claim is based, not upon any

challenge to the State's ability to restrict his freedom of action in a sphere contended to be "private," but instead on a claim that the State may not require him to disclose "private" (as he defines it) information contained in official records concerning an arrest or an indictment. We have found no "substantive privacy decisions [that] hold this or anything like this, and decline to enlarge them" (*Paul* v. *Davis, supra* at 713) in circumstances such as the present.[1]

(b) Similarly, we are not persuaded by the defendant's argument that inquiry into his criminal history violated his right to privacy under G. L. c. 214, § 1B, inserted by St. 1974, c. 193, § 1. The requirement that the defendant disclose the fact of his indictment when applying for the renewal of his insurance broker's license did not constitute an "unreasonable, substantial or serious interference with his privacy." See *Hastings & Sons Publishing Co.* v. *City Treasurer of Lynn, supra* at 819. Cf. *Broderick* v. *Police Commr. of Boston*, 368 Mass. 33, 44 (1975), cert. denied, 423 U.S. 1048 (1976) (a privacy claim under G. L. c. 214, § 1B, may be surrendered by public display).

(c) The defendant further argues that the information sought by the commissioner constituted "criminal offender record information" within the meaning of G. L. c. 6, § 167, inserted by St. 1972, c. 805, § 1. We do not agree. That statute restricts the dissemination of "records, and data compiled by criminal justice agencies." Here the commissioner did not seek access to any records or data in the possession of a criminal justice agency which would require compliance with G. L. c. 6, § 172 (which sets forth the procedure for the dissemination of such information). As we read §§ 168-178 of G. L. c. 6, they do not bar the commissioner from asking the defendant about his crimi-

---

[1] As we conclude that in these circumstances there was no invasion of any right of privacy, we do not reach the question whether a defendant could be found guilty under G. L. c. 268, § 1A, for falsely answering a question which is an invasion of his privacy.

nal history. In any event, we are certain that nothing in those sections justifies the defendant in responding falsely to such an inquiry.

(d) The defendant also claims protection under G. L. c. 276, § 100C, which applies to the sealing of criminal records under certain circumstances. It is not asserted that the defendant's records were sealed at the time the defendant submitted his renewal application, but it is argued that the statute embodies a policy of ensuring confidentiality and nondisclosure of records concerning past criminal proceedings not resulting in convictions. We need not decide the point as we are confident in our belief that, even if such a policy behind sealing criminal records did come into play in these circumstances, the broad authority of the commissioner to regulate insurance brokers as well as insurance companies (see, e.g., *Rockland Mut. Ins. Co.* v. *Commissioner of Ins.*, 360 Mass. 667, 672-673 [1971]) for the protection of the public is paramount and therefore must prevail. See G. L. c. 175, § 166. See generally *Commonwealth* v. *Roswell*, 173 Mass. 119, 121 (1899).

(e) The defendant next argues that the commissioner may not inquire into his criminal past because G. L. c. 151B, § 4(9), as appearing in St. 1974, c. 531, forbids an employer to request information regarding arrests, detentions, and dispositions of violations of law which did not result in convictions, "in connection with an application for employment." We do not think that an application for renewal of an insurance broker's license constitutes "an application for employment" within the meaning of G. L. c. 151B, § 4(9).[2]

3. Under G. L. c. 268, § 1A, materiality is an essential element of the offence of perjury, which must be proved by the Commonwealth. *Commonwealth* v. *Louis Constr. Co.*, 343 Mass. 600, 607 (1962). It is argued by the defendant that the false statements included in his renewal

---

[2] No question has been raised under G. L. c. 4, § 7, Twenty-sixth.

applications were not material under G. L. c. 268, § 1A, and therefore he is not guilty of perjury.

"Materiality in respect of perjury means relevance in the sense that the answer might tend in reasonable degree to affect some aspect or result of the inquiry." *Commonwealth* v. *Cerveny,* 373 Mass. 345, 352 (1977), quoting from *Commonwealth* v. *Giles,* 350 Mass. 102, 110 (1966). We conclude that the information the commissioner sought by inquiring into the defendant's criminal background is material to his statutorily imposed obligation to be satisfied prior to issuing a license that an applicant is trustworthy and competent. See G. L. c. 175, § 166. "[T]he fact that an applicant had been prosecuted and acquitted, or that a complaint against him had been placed on file, would not in itself alone justify the denial of his application. Neither would convictions of some offenses necessarily show the applicant . . . to be unfit to be . . . [licensed as an insurance broker]. But information of this kind might at least disclose matters that ought to be investigated." *Commonwealth* v. *Weene,* 319 Mass. 231, 234 (1946). *Blake* v. *United States,* 323 F.2d 245, 247 (8th Cir. 1963). When the defendant applied to renew his broker's license, he was under indictment for larceny and fraudulent procurement of insurance premiums. Undoubtedly, the circumstances leading to these indictments would be considered by the commissioner in determining the trustworthiness and competence of the applicant. See *Commonwealth* v. *Giles, supra,* and authorities cited. There was testimony from the director of the agents and brokers licensing section of the Department of Banking and Insurance to the effect that an application with an affirmative response to the question about the applicant's criminal history would be subject to further investigation. As it cannot be said that the defendant's response "might [not] tend in reasonable degree to affect some aspect or result of the [commissioner's] inquiry," we conclude that his response was material within the meaning of c. 268, § 1A.

4. The defendant also argues that the information sought did not constitute a statement required by law under G. L. c. 268, § 1A. We do not agree. The commissioner is entrusted with the responsibility of licensing insurance brokers and he has been granted broad supervisory powers over the insurance industry. See *Commissioner of Ins.* v. *Century Fire & Marine Ins. Corp.*, 373 Mass. 473, 477 (1977); *Rockland Mut. Ins. Co.* v. *Commissioner of Ins.*, 360 Mass. 667, 672-673 (1971). Pursuant to G. L. c. 175, § 166, as amended by St. 1971, c. 968, § 5, an applicant for a broker's license must file with the commissioner a written application on a form provided by the commissioner. The statute provides that certain detailed information be included in the application as well as "such other information as the commissioner may require." We think the commissioner's authority to require "such other information" is also applicable where the applicant is seeking to renew a previously issued license. Cf. *Scannell* v. *State Ballot Law Commn.*, 324 Mass. 494, 501 (1949). Section 166 of G. L. c. 175, as so amended, provided that a license issued to an insurance broker expired one year from its issuance unless earlier revoked or suspended.[3] The only provision in § 166 regarding the renewal of a broker's license permits the commissioner to renew such licenses "upon payment of the fee prescribed by section fourteen, for any succeeding [period] without requiring anew the detailed information hereinbefore specified." As the commissioner has not permitted the automatic renewal of licenses under § 166, and as each broker's license expired at the end of one year, we see no reason why each applicant for a license renewal could not be required to submit the same detailed information required when applying for an original license. See *Commonwealth* v. *Cerveny*, 373 Mass. at 354.

---

[3] The statute was amended in 1978 to provide for a three year period of validity for a broker's license. St. 1977, c. 1000, § 4.

5. The defendant also contends that the commissioner is without authority to require that the statements in the application for renewal be made under the penalties of perjury. The commissioner's powers are established by G. L. c. 175. The scope of his authority must be determined by reading the statute as a whole, inferring such powers as are reasonably necessary for accomplishing the purposes the statute intended, even though such powers are not traced to specific words. *Commonwealth* v. *Cerveny, supra.* Section 166 requires that an initial application for a broker's license "be executed on oath by the applicant." Since, as we have noted, the commissioner has chosen not to renew these licenses automatically under § 166, we think that he had the authority, based on his broad supervisory powers, not only to require an applicant, seeking to renew his license, to provide the detailed information required for an original license, but also to require that the renewal application be executed on oath, and thus subject to the penalties of perjury. *Id.* at 354.

6. The trial judge ruled that the defendant's statements, contained in his application, were material as matter of law. The defendant contends that the judge erred by not submitting the question of materiality to the jury for determination as matter of fact. We perceive no error.[4] Under Massachusetts law materiality is an element of the offence of perjury which must be proved by the Commonwealth. *Commonwealth* v. *Louis Constr. Co.,* 343 Mass. at 607. But the issue "[w]hether questions, allegedly falsely answered, were relevant and material is a question of law." *Commonwealth* v. *Giles,* 350 Mass. at 110. *Sinclair* v. *United States,* 279 U.S. 263, 298-299 (1929). *United States* v. *Romanow,* 509 F.2d 26, 28 (1st Cir.

---

[4] The defendant's argument that the commissioner did not rely on his statements is beside the point because, as indicated earlier, "whether the false [statement] did in fact influence a pertinent determination" (*Commonwealth* v. *Cerveny,* 373 Mass. at 352 quoting from *Commonwealth* v. *Giles,* 350 Mass. at 111) is of no consequence. See *United States* v. *Romanow,* 509 F.2d 26, 28 (1st Cir. 1975).

1975). *United States* v. *Kehoe*, 562 F.2d 65, 68 (1st Cir. 1977).

7. We are not persuaded by the contention that the trial judge erred in denying the defendant's motion for revision of his sentence. The determination of sentence lies within the discretion of the trial judge. *Commonwealth* v. *Shagoury*, 6 Mass. App. Ct. 584, 599 (1978). Section 1 of G. L. c. 268 provides that a person convicted of perjury "shall be punished by imprisonment in the state prison for not more than twenty years . . . or by imprisonment in jail for not more than two and one half years . . . ." The combined effect of the sentences on the defendant was that he should serve one year in jail followed by three and one half years probation. "The sentence[s] thus imposed [are] admittedly permissible under [G. L. c. 268, § 1] and it is not a function of this court to review . . . otherwise lawful sentence[s] which [are] within the limits of the applicable statutory provisions." *Commonwealth* v. *Franks*, 365 Mass. 74, 81 (1974). *Commonwealth* v. *Murray*, 4 Mass. App. Ct. 493, 498 (1976).

*Judgments affirmed.*