COMMONWEALTH *vs.* JAMES R. McDUFFEE.

Suffolk. September 11, 1979. — December 13, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, LIACOS, & ABRAMS, JJ.

*Insurance,* Broker. *Perjury. Law or Fact. Practice, Criminal,* Exceptions: failure to save exception. *Constitutional Law,* Trial by jury.

Even though the defendant at a perjury trial took no exception to that part of the judge's charge in which he ruled that the defendant's statements were material as matter of law, this court on appeal considered the propriety of the ruling where the rule that materiality in respect of perjury is a matter for the court to decide was so firmly established in the case law of the Commonwealth that it was unlikely the judge would have modified the charge had the defendant objected and where the defendant on appeal raised substantial constitutional questions with respect to the rule. [356-364]

At the trial of two indictments charging the defendant with perjury, the judge erred in instructing the jury that the defendant's statements, contained in applications for renewal of his insurance broker's license, which falsely denied there was an indictment pending against him,

were material as matter of law; the issue of materiality was a question of fact to be submitted to the jury. [364-366]

At the trial of two indictments charging the defendant with perjury for making false statements in applications for renewal of his insurance broker's license, it was proper for the judge, in the circumstances, to determine as matter of law that the information sought in the application was "required by law" within the meaning of G. L. c. 268, § 1A. [366-367]


INDICTMENTS found and returned in the Superior Court on June 21, 1977.

The cases were tried before *Tisdale,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Herbert D. Lewis (Howard J. Alperin* with him) for the defendant.

*Paul W. Shaw,* Assistant Attorney General, for the Commonwealth.

LIACOS, J. The defendant appeals under the provisions of G. L. c. 278, §§ 33A-33G, from convictions in November, 1977, on two indictments charging perjury under G. L. c. 268, § 1A. He was sentenced on one indictment to a term of eighteen months in a house of correction, six months of which to be suspended, and, on the other indictment, to a term of two and one-half years in a house of correction, sentence suspended for three years. Execution of sentence was stayed, pending appeal, by a Justice of the Appeals Court. The Appeals Court affirmed the judgments of the Superior Court.[1] We granted defendant's application for further appellate review. We reverse.

The defendant argues that the trial judge erred in (1) denying his motion for a continuance; (2) denying his motions to dismiss and for a directed verdict; (3) withdrawing matters from the jury's consideration; and (4) denying his motion to revise and revoke the sentences imposed. We consider only the arguments presented on the third claim of error,

---

[1] See *Commonwealth* v. *McDuffee,* 7 Mass. App. Ct. 129 (1979).

being content that the decision of the Appeals Court properly determined the other claims adversely to the defendant.

We briefly summarize the evidence. The defendant, James R. McDuffee, had been doing business as the James R. McDuffee Insurance Agency, Inc., since 1963. In 1974 and 1975 the defendant submitted applications for the renewal of his insurance broker's license to the Division of Insurance of the Department of Banking and Insurance. The renewal procedure consisted of completing and filing with the Division of Insurance a form, supplied by the Commissioner of Insurance (Commissioner). Question number seven on the renewal application form asked the applicant, "Have you within the past year been convicted of, arrested or prosecuted for any crime or offense against the laws of this or any other state or country or pleaded nolo to any indictment or complaint for any such crime or offense or been placed upon probation therefor or is there pending against you any indictment, complaint, or proceeding for violation of such laws?" The defendant's applications filed for the years 1974 and 1975 included a negative response to this question. In fact, the defendant was then under indictment for larceny and fraudulent procurement of insurance premiums. The defendant signed his name at the end of each application, in the space provided therefor, immediately below the phrase: "I hereby verify the foregoing statements and answers and declare that they were made under the penalties of perjury."

There was evidence that the effect of a "Yes" answer to question number seven would have been to cause the head administrative clerk who processed renewal applications to decline to renew the defendant's license as a matter of course. She would have referred the matter to the Deputy Commissioner of Insurance who was her superior. Additionally, the former Commissioner of Insurance, who held office for at least part of the relevant period, testified that the fact of indictment by itself would not preclude renewal of a broker's license, although it might serve as the basis of an administrative inquiry. The evidence also showed that

no such inquiry took place in this instance (or in any other case), even though the Commissioner had actual knowledge of the indictments outstanding against the defendant and that the defendant's license was renewed for the years in question. The defendant was acquitted July 29, 1977, on the indictments charging him with larceny and fraudulent procurement of insurance premiums.

The judge ruled, and so charged the jury, that two of the elements of perjury under G. L. c. 268, § 1A, were satisfied as a matter of law.[2] The answer to question number seven of the renewal form being admittedly false, and the form being admittedly signed by the defendant, the only factual issue left to the jury to resolve was whether the false statements were wilfully made.

The defendant assigns as error the ruling and charge by the judge that the statement made was (a) required by law and (b) material. He argues before us, as he did before the Appeals Court, that, by the judge's ruling and charge as to these two elements of the crime, he improperly invaded the

---

[2] The judge quoted G. L. c. 268, § 1A, to the jury as follows: "No written statement required by law shall be required to be verified by oath or affirmation before a magistrate if it contains or is verified by a written declaration that it is made under the penalties of perjury. Whoever signs and issues such a written statement containing or verified by such a written declaration shall be guilty of perjury and subjected to the penalties thereof if such statement is wilfully false in material matter."

The judge then instructed: "As to that first sentence, . . . I rule as a matter of law that these applications are written statements of the kind described in that first sentence.

"Secondly, I rule as a matter of law that the paragraph at the end of each one above the signature of the defendant complies with that statute, this statute. It is a declaration made under the penalties of perjury.

"So, you have those as a matter of law."

On materiality, the charge given stated:

"The application was filed, and you can find, and I rule, that the application was filed in order to get another license; and the answer to Question 7 would be material to the issuance of that license. That question of materiality is my decision as a matter of law, and I so rule that the Question 7 and the answer thereto are material in the sense that the answer might tend to a reasonable degree to affect some aspect or result in processing application and the issuance of the renewed license or a new license."

fact-finding function of the jury, and, hence, deprived defendant of his right to trial by jury.

In responding to these claims of error, we must consider first whether the issues sought to be argued were properly raised at trial. It is a fundamental rule of practice that where a party alleges error in a charge he must bring the alleged error to the attention of the judge in specific terms in order to give the judge an opportunity to rectify the error, if any. *Commonwealth* v. *Freeman,* 352 Mass. 556, 563 (1967). Absent a proper objection and exception to the charge, an assignment of error brings nothing for review to an appellate court. *Commonwealth* v. *Underwood,* 358 Mass. 506, 509 (1970).[3]

Our review of the transcript reveals that no objection was taken to the judge's ruling that materiality was established as matter of law, nor was any objection or exception taken to this portion of the charge. The defendant's assignment of error seeking to raise this and the related issue of the propriety of ruling that the statement was "required by law" relies on the same exception, set forth in the margin.[4] Taken

---

[3] Rule 24 (b) of Mass. R. Crim. P., 378 Mass. 895 (1979) (effective July 1, 1979) was not in effect during the trial of the case at bar. However, we note that the rule is essentially a codification of existing practice. Rule 24 (b) provides in pertinent part: "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, specifying the matter to which he objects and the grounds of his objection." An exception is not required under the rule.

[4] After the charge in question had been delivered there was a bench conference at which counsel for the defendant engaged in the following dialogue with the judge:

DEFENSE COUNSEL: "I want to take an exception . . ."

THE COURT: "To what I said when I ruled out the evidence on the results of the other proceedings and . . ."

DEFENSE COUNSEL: "On the . . ."

THE COURT: "Just a moment. Let me make it clear. The subsequent proceedings in connection with the indictments, namely, the trial and the results of the trial?"

DEFENSE COUNSEL: "Right."

THE COURT: "And, secondly, the evidence concerning what happened or what might happen after the filing of the applications?"

in context, the exception, to the extent that it deals with "immateriality," challenges the propriety of another ruling to the effect that evidence of a subsequent acquittal on the indictments pending when question number seven was answered was immaterial to the issue of perjury at the time of the answers. The validity of that ruling is not questioned by the defendant in this appeal. Such an exception does not suffice to focus the issue of whether materiality is a question for the judge or for the jury as the defendant now argues.[5] To the extent, however, the defendant assigns and argues error as to the ruling as matter of law that the statement was "required by law," the exception, in its second part, appears sufficient. We must decide whether the error as to materiality, if any, "was of a type and seriousness which should lead us to reverse in the absence of a proper exception. The test is whether there is a substantial risk of a miscarriage of justice." *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967).

The defendant bases his claim of error, in part, on the constitutional principles enunciated in *In re Winship,* 397 U.S. 358 (1970), and *Mullaney* v. *Wilbur,* 421 U.S. 684 (1975).

---

DEFENSE COUNSEL: "Right."

THE COURT: "About the failure to . . ."

DEFENSE COUNSEL: "Whether he could remain in business or act as a broker."

THE COURT: "Yes. I think that is immaterial, as I have indicated."

DEFENSE COUNSEL: "An exception to your finding as a matter of law that this is immaterial and an exception to your finding that this is a statement required by law."

THE COURT: "It is a statement under the first sentence of the statute."

DEFENSE COUNSEL: "That's right."

"EXCEPTION NO. 31.

BENCH CONFERENCE CONCLUDED."

[5] The Commonwealth does not argue the issue whether the alleged error as to the withdrawal of the element of materiality from the jury is properly before us. We assume that the defendant's misplaced reliance on exception number 31 is unintentional, but add a cautionary note against the submission of misleading briefs. S.J.C. Rule 3:22, DR 7-102, as amended, 378 Mass. 838 (1979). We note that neither party addressed this issue before the Appeals Court, and that court proceeded on the apparent assumption that the matter was properly before it.

He argues that the long-standing rule that materiality is a question of law for the court to decide is an impermissible distortion of the principle that the prosecution is required as matter of constitutional due process to prove beyond a reasonable doubt the existence of every fact necessary to constitute the crime charged. In *Commonwealth* v. *Stokes*, 374 Mass. 583 (1978), the trial of which occurred before *Mullaney* was decided, we considered a defendant's argument that the judge's instructions were constitutionally inadequate under *Mullaney* v. *Wilbur*, *supra*, even though trial counsel had not taken exception to the judge's charge. In that case we said, "[T]o hold otherwise would be tantamount to requiring clairvoyance on the part of defense counsel." *Stokes, supra* at 588.

Similar considerations make it appropriate for us to consider this alleged error despite the absence of a specific exception. The rule that materiality in respect of perjury is a matter for the court to decide seemed so firmly established in the case law of this Commonwealth (see *Commonwealth* v. *Giles*, 350 Mass. 102, 110 [1966]) that, as a practical matter, it is extremely unlikely that the judge would have modified the charge. As the rationale behind the requirement of a specific exception is to enable the judge to make any necessary correction (see *Squires* v. *Fraska*, 301 Mass. 474, 477-478 [1938]),[6] we do not feel that the purpose behind the requirement would be served by our refusal to decide this issue.[7]

---

[6] While *Squires* v. *Fraska*, 301 Mass. 474 (1938), is a civil case, we have noted in the past that "[t]he law as to exceptions in criminal cases is the same as that in civil cases." *Commonwealth* v. *Underwood*, 358 Mass. 506, 509 (1970), citing *Commonwealth* v. *MacGregor*, 319 Mass. 462, 463 (1946).

[7] Additionally, we are influenced by the fact that both parties have briefed the issue and the Appeals Court has reached it. Furthermore, as we have stated, exception number 31 appears adequate to raise the issue of the propriety of the judge's ruling as matter of law that the statement was "required by law." As both the "required by law" issue and the "materiality" issue involve the same constitutional considerations relative to withdrawing an element of a crime from the jury's consideration, we feel it appropriate to reach both issues.

While this alone may be insufficient reason for considering a purported error in the judge's charge to which no specific exception was taken at trial, the substantial constitutional questions raised by the defendant on appeal compel the conclusion that a substantial risk of a miscarriage of justice does exist. *Commonwealth* v. *Franks*, 365 Mass. 74 (1974).

We consider first the defendant's contention that the judge erred in instructing the jury that the defendant's statements, contained in his application, were material as matter of law. In *Commonwealth* v. *Giles*, 350 Mass. 102 (1966), this court held, "[W]hether questions, allegedly falsely answered, were relevant and material is a question of law. . . . Materiality in respect of perjury means relevance in the sense that the answer might tend in reasonable degree to affect some aspect or result of the inquiry. . . . [T]he Commonwealth must prove facts from which it can be determined that any allegedly false answer was directly or circumstantially relevant and material to the . . . inquiry." *Id.* at 110-111.[8] The holding in *Giles* that materiality is a question of law is predicated on ancient authority which must be reexamined in light of recent constitutional doctrine, as well as later decisions of this court.

Early English case law presents a split of opinion as to whether the issue of materiality should be treated as a question of law for the court's determination or a question of fact to be submitted to the jury. See 1 W.D. Russell, Crimes and Misdemeanors 474-476 (7th ed. 1910). Compare *Regina* v. *Courtney*, [1856], 7 Cox C.C. 111, C.C.R. (Ir.), and *Regina* v. *Gibbon*, [1861] Le. & Ca. 109, 114 (materiality in respect of perjury is a question of law), with *Regina* v. *Goddard*, [1861] 2 F. & F. 361, and *Regina* v. *Lavey*, [1850],

---

[8] To the extent that *Commonwealth* v. *Giles*, 350 Mass. 102 (1966), requires the Commonwealth to prove facts on which a finding of materiality can be made, the case is followed. See also *Commonwealth* v. *Louis Constr. Co.*, 343 Mass. 600, 607 (1962). Likewise, the test for determining materiality set forth in *Giles, supra,* accurately represents the law in this Commonwealth. See also *Commonwealth* v. *Borans, ante* 117, 136, (1979), and *Commonwealth* v. *Cerveny*, 373 Mass. 345, 352 (1977).

3 Car. & Kir. 26 (materiality is a question of fact for the jury). The controversy was set to rest in England by the Perjury Act of 1911 which provided in pertinent part, "(6) The question whether a statement on which perjury is assigned was material is a question of law to be determined by the court of trial." 1 & 2 Geo. 5, c. 6, § 1 (6) (1911).[9]

Massachusetts cases prior to the 1911 statutory enactment in England present a less than clear picture of the state of the law on this issue. See, for example, *Commonwealth v. Parker*, 2 Cush. 212 (1848); *Commonwealth v. Grant*, 116 Mass. 17 (1874), and *Commonwealth v. Hollander*, 200 Mass. 73 (1908). In sum, our review of the early case law does not suggest that the prevailing rule is firmly rooted in the common law.

In *Giles, supra*, these early cases are not considered. Rather, the holding in *Giles* that materiality in respect of perjury is a question of law is based on two United States Supreme Court cases which so held. See *Sinclair v. United States*, 279 U.S. 263, 298-299 (1929), and *Russell v. United States*, 369 U.S. 749, 755-756 (1962), cited in *Giles, supra* at 110. As *Russell* refers exclusively to *Sinclair* for the proposition that materiality is a question of law, we refer to *Sinclair* for guidance as to the conceptual underpinnings of the rule.

In *Sinclair* the Court noted that the issue of materiality in the perjury context "may be likened to those [questions] concerning relevancy at the trial of issues in court. . . . [I]t is uniformly held that relevancy is a question of law. Greenleaf on Evidence (13th ed.) § 49. Wigmore on Evidence, §§ 2549, 2550." *Sinclair, supra* at 298. While we express no disagreement with the well established rule of evidence that the judge should determine whether evidence is relevant and material and consequently admissible, we question whether an analogous rule with respect to the materiality element of the crime of perjury is appropriate. We are in agreement with the courts of New York that the issues

---

[9] The perjury statutes in this Commonwealth, G. L. c. 268, §§ 1-1A, contain no such provision.

are properly distinguishable: "[M]ateriality as a substantive element of the crime of perjury is something more than materiality considered in an evidentiary ruling by the court. Materiality in such a case becomes a matter for ultimate determination by the decisional process." *People* v. *Clemente,* 285 App. Div. 258, 262 (1954), aff'd, 309 N.Y. 890 (1955).

In *Sinclair* the Court also stated, "It would be incongruous and contrary to well-established principles to leave the determination of such a matter [materiality in a perjury case] to a jury. *Interstate Commerce Commission* v. *Brimson,* [154 U.S. 447, 489 (1894)]. *Horning* v. *District of Columbia,* 254 U.S. 135 [1920]." *Sinclair, supra* at 299. Our examination of *ICC* v. *Brimson, supra,* and *Horning* v. *District of Columbia, supra,* compels the conclusion that such principles as were "well-established" in 1926, when *Sinclair* was decided, have been eroded seriously by modern decisional authority.

In *Brimson* the Court stated, "Surely it cannot be supposed that the question of contempt of the authority of a court of the United States, committed by a disobedience of its orders, is triable, of right, by a jury." *Id.* at 489. In light of the Court's decision in *Bloom* v. *Illinois,* 391 U.S. 194 (1968), we can no longer consider removing the materiality element of the crime of perjury from the jury to be justifiable on the basis that the crime of contempt is not "triable, of right, by a jury." *Brimson, supra* at 489. In *Bloom* the Court held that there is a right to a jury trial when a contempt is punished as a "serious" crime. The Supreme Court has made it clear that any jail sentence over six months is "serious" and may be imposed only when a jury trial is available. *Baldwin* v. *New York,* 399 U.S. 66 (1970).[10] We note that the defendant in

---

[10] General Laws c. 268, § 1, provides in pertinent part, "Whoever commits perjury in any other case [other than on the trial of an indictment for a capital crime] shall be punished by imprisonment in the state prison for not more than twenty years or by a fine of not more than one thousand dollars or by imprisonment in jail for not more than two and one half years, or by both such fine and imprisonment in jail." General Laws c. 268, § 1A, provides that whoever violates this provision "shall be guilty of perjury and subject to the penalties thereof if such statement is wilfully false in a material matter."

the case at bar was sentenced for a period in excess of six months.

Turning to *Horning,* cited in *Sinclair,* we again find that serious constitutional questions are raised in light of modern case law. In *Horning,* the Court found no error in the judge's charge: "Of course, gentlemen of the jury, I cannot tell you in so many words, to find defendant guilty, but what I say amounts to that." *Horning, supra* at 140. Noting, "[t]he judge cannot direct a verdict [of guilty] it is true, and the jury has the power to bring in a verdict in the teeth of both law and facts" (*id.* at 138), the Court held that in a criminal case the judge may instruct the jury that there is no issue of fact to determine and it is their duty to return a verdict of guilty. In a vigorous dissent, Mr. Justice Brandeis stated: "The law which in a criminal case forbids a verdict directed 'in so many words,' forbids such a statement as the above." *Id.* at 140. The inappropriateness of instructing the jury that any portion of the government's evidence is undisputed is now well established. See *DeCecco* v. *United States,* 338 F.2d 797 (1st Cir. 1964).

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364 (1970). See *Mullaney* v. *Wilbur,* 421 U.S. 684 (1975). Our own cases have made it clear that "the trier of fact cannot be compelled to find against the defendant as to any 'element of the crime.'" *Commonwealth* v. *Jones,* 372 Mass. 403, 410 (1977). See *Commonwealth* v. *Pauley,* 368 Mass. 286, 291, appeal dismissed for want of substantial Federal question, 423 U.S. 887 (1975). We have stated our view of the impact of *Mullaney* and *In re Winship* in these words: "[I]t is clear that all of the elements necessary to prove commission of the offense charged are [facts] within the meaning of *Winship.* See *Mullaney* v. *Wilbur,* 421 U.S. 684, 699 n.24 (1975)." *Commonwealth* v. *Kostka,* 370 Mass. 516, 532-533 n.16 (1976). Where a dispute as to such facts exists, the Sixth Amendment to the United States Constitution guarantees

an accused the right to have a jury decide the question. A judge may not "invade the province of the jury by undertaking to decide on the weight or effect of evidence, or by refusing to submit to their consideration any question of fact, material to the issue, which may be in dispute." *Commonwealth* v. *Cote,* 5 Mass. App. Ct. 365, 370 (1977), quoting from *Gavett* v. *Manchester & Lawrence R.R.,* 16 Gray 501, 505 (1860).

In the area of materiality under a perjury indictment, factual disputes may arise as to the purpose of the question and the object of the inquiry. See *Clemente, supra* at 272 (Breitel, J., dissenting). We see no justification for removing the issue from the jury in order to allow the trial judge to decide if there exists a sufficient connection between the purpose of the question and the object of the inquiry to warrant a finding of materiality.[11] "While as lawyers we are accustomed to thinking of materiality as a matter for judicial ruling, there is nothing in the nature or quality of materiality which makes it essentially a legal concept or removes it from the ken of a layman's discernment and determina-

---

[11] Cf. *United States* v. *Romanow,* 509 F.2d 26 (1st Cir. 1975). "While there is some suggestion in another context that the issue of materiality . . . may be submitted to a jury . . . we think it properly within the province of the trial judge — at least in the ordinary case *where the underlying facts are not themselves in dispute.*" *Id.* at 28 (emphasis supplied). *United States* v. *Kehoe,* 562 F.2d 65, 68 (1st Cir. 1977), also cited by the Appeals Court in its decision in the case at bar, 7 Mass. App. Ct. 129, 139 (1979), is inapposite. The briefs filed in *Kehoe, supra,* reveal that the issue in that case was whether the judge properly admitted evidence in the trial of the perjury case. The defendant excepted on the ground that the trial judge admitted evidence which was immaterial to the matter before the court, and he alleged no error with respect to the materiality element of the crime of perjury.

While the Model Penal Code recommends that the issue of materiality be decided as matter of law, it does recognize that the resolution of disputed factual issues bearing on materiality should be resolved by the jury. Model Penal Code § 208.20, Comment (Tent. Draft No. 6, 1957) at 113. R.A. Anderson, Wharton's Criminal Law and Procedure § 1310 (1957) is in accord. "Ordinarily the materiality of testimony is a question of law for determination by the court in which the defendant is tried for perjury. If, however, the facts are in dispute so that the materiality cannot be determined until the facts are first decided, the question of materiality is determined by the jury." *Id.*

tion. The word 'material' and the idea of materiality are commonly understood, and every day judgments on a variety of subjects are made upon the basis of a layman's sense of materiality." *Clemente, supra* at 261-262. The judge should instruct the jury on the law and their role in applying the law to the facts as they so find them. It is not beyond a layman's judgment whether the statements in question had a "reasonable and natural tendency" to influence the pertinent determination. *Commonwealth* v. *Borans, ante* 117, 136 (1979), quoting from *Commonwealth* v. *Giles, supra* at 111. Moreover, the complexity of a legal concept should not justify removing an element of a crime from the jury's determination where there are underlying factual determinations to be made. Certainly in a murder case we would not remove the element of malice aforethought from the jury simply because a judge is better suited to apply that complex and elusive concept to the facts of the case.

We find reversible error in the judge's failure to submit to the jury the questions regarding the purpose of question number seven and the object of the application. While the evidence was undisputed that the object of the application was to obtain a license renewal and the criteria for such renewal were trustworthiness and competence, there was conflicting evidence as to the purpose of that portion of question number seven relative to indictments. The jury could have decided on the basis of all the evidence presented that the purpose of asking an applicant if he or she was under indictment was generally to determine if that applicant was trustworthy and competent. The evidence presented at trial could also warrant a finding that the purpose of asking an applicant about pending indictments was merely to "keep tabs on the situation." There was testimony to the effect that an applicant under indictment would not be prevented from continuing to practice as an insurance broker, and only a conviction would warrant agency action against the applicant. The jury must be allowed to decide these underlying factual questions, and, after making such factual determinations, the jury should

be permitted to apply the law to the facts so found. Without expressing any opinion as to the exact jury instructions which are required, the jury should be instructed that in order to return a verdict of guilty, they must find that the answer to question number seven relative to indictments was material in the sense that it had a reasonable and natural tendency to influence the pertinent determination. *Borans, supra,* and cases cited therein.

We next reach the defendant's contention that the judge improperly usurped the fact-finding function of the jury by ruling as matter of law that the information sought was "required by law" within the meaning of G. L. c. 268, § 1A. The defendant asserted by his motion to dismiss prior to trial that the perjury prosecution must fail because the statements on the renewal application were not required by law to be attested to under the pains and penalties of perjury. The motion was denied by the judge who further declined to submit this issue to the jury. No evidence on this issue was offered at trial.

In the context of this case, there were no factual questions as to this issue for the jury to determine. Although G. L. c. 175, § 166, does not expressly authorize the Commissioner to require such information to be provided under oath in an application for renewal of a broker's license, the issue of whether such authority is impliedly given to the Commissioner by the statute is purely a legal one. Such a question is one of statutory construction for the court, and it is proper for the judge to have determined the question and to so inform the jury. Additionally, we are in accord with the reasoning of the Appeals Court[12] in deciding that the judge correctly ruled the information sought in question number seven to be a "statement required by law" within the meaning of G. L. c. 268, § 1A. We note, however, that the introduction of relevant evidence with respect to this issue could require a determination of facts. For example, the question whether the particular form and the questions

---

[12] *Commonwealth* v. *McDuffee,* 7 Mass. App. Ct. 129, 137 (1979).

contained therein had been authorized by the Commissioner, or whether prescribed statutory, regulatory or administrative procedures had been followed in formulating such a form might well involve factual determinations necessary to submit to the jury. If the evidence submitted raised such questions, then the matter would have to be submitted to the jury under a proper charge which permits the jury to apply the law to the facts found by them.[13]

We find no merit in defendant's argument that the judge erred in denying his motions to dismiss and for a directed verdict because the Division of Insurance was prohibited by law from inquiring about past or present indictments. We are in accord with the reasoning set forth in the opinion of the Appeals Court. See *Commonwealth* v. *McDuffee, supra* at 133-135.

We address neither defendant's contention that the judge erred in denying his motion for a continuance nor his assignment of error with respect to the judge's denial of his motion for a revision of sentence, as the case must be remanded for a new trial for the reasons stated herein.

*Judgments of the Superior Court reversed.*
*Verdicts set aside.*

---

[13] We note that nothing we say here as to either the issue of materiality or the issue of whether the statement was "required by law" precludes a judge from charging a jury in the usual fashion as to the law of the case. Nor does it preclude a judge from ruling on proper motion by the defendant that one or both of these elements of the crime has not been alleged or made out "prima facie."