**STATE of Utah, Plaintiff and Respondent,**

v.

**Jerry V. STRAND, aka Jerry Verne Strand, Defendant and Appellant.**

No. 20344.

Supreme Court of Utah.

May 30, 1986.

Daniel L. Berman, Ross C. Anderson, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Paul M. Warner, Salt Lake City, for plaintiff and respondent.

HALL, Chief Justice:

Defendant Jerry V. Strand appeals his second degree felony conviction for making a false material statement under oath at an official proceeding. U.C.A., 1953, § 76–8–502(1) (1978 ed.).

On January 18, 1978, defendant testified at a supplemental order proceeding in a civil case in which he was the defendant/debtor. The judgment against defendant was approximately $23,000. On August 24, 1981, an information was filed charging defendant with having made a false material statement at that proceeding. An amended information was filed on February 26, 1982.[1] Count II of the information charged defendant as follows:

On or about January 18, 1978, in Salt Lake County, State of Utah, said Jerry V. Strand, having duly taken an oath to testify truthfully and completely before the Third Judicial District Court, did intentionally, willfully, knowingly and contrary to that oath make false material statements in violation of section 76–8–502(1), Utah Code Ann.1953, as amended, a felony of the second degree, to wit: that on or about January 18, 1978, he had no assets wherewith he could satisfy existing judgments.

The probable cause statement attached to the information stated in pertinent part with regard to count II:

Bank and securities brokerage records demonstrate that on or about January 18, 1978, Jerry V. Strand had assets wherewith he could satisfy existing judgments, to wit: brokerage records demonstrate that Strand owned or controlled negotiable securities which would satisfy existing judgments and Strand had sufficient assets in savings accounts which would serve to satisfy existing judgments.

Defendant argues that he did not make precisely the statement charged and was thus deprived of fair notice sufficient to

---

1. This Court in *State v. Strand*, Utah, 674 P.2d 109 (1983) (*Strand I*), held that the applicable statute of limitations, U.C.A., 1953, § 76–1–302(1)(a), had been tolled by the August 24, 1981 information and again by the February 26, 1982 information. Therefore, we held that there was no bar to the prosecution.

enable him to prepare his defense. Defendant also argues that the variance between the evidence produced at trial and the statement charged was so substantial that he was not given fair notice of the charges against him.

■ The law does not require that a perjury information set forth the exact words of the perjured testimony.[2] The information need only set out such testimony in substance.[3] It is undisputed that defendant did not testify verbatim that he "had no assets wherewith he could satisfy existing judgments." However, defendant did in fact testify in substance that he had no assets. In addition to testifying that he had no money to satisfy the judgment against him and that he was not in a position to make payment on the judgment, defendant testified that he owned no real estate; had no interest in any real estate and did not own his own home; had no foreign investments; had no negotiable securities; had no nominee accounts; had no active security trading accounts; had no personal checking accounts except a lawyer's trust account; had no savings accounts and was not a signatory on any savings account; owned no automobile, art, or valuable jewelry; had no cash money on him at the supplemental proceeding; had no accounts receivable; had no dividends due him or anticipated in the future; had no active credit cards; did not own a boat or sporting goods; had no shared use of recreational property; and had no salary or income generated from various corporate activities. Defendant did not identify one single asset which he owned, with the exception of nonnegotiable securities.

The information in this case did set out the substance of the testimony that the State alleged was false, i.e., defendant testified that he had no assets with which he could satisfy the judgment against him. The probable cause statement attached to the information in this case then went on to identify those assets the State would focus on in attempting to prove that defendant did indeed have assets which could have been used to satisfy the judgment against him, that is, negotiable securities and savings accounts.

■ Thus, defendant was not left to guess at what part or parts of the supplemental order proceeding the State would rely upon. It is clear from the tenor of the information that the "assets" terminology was not intended to be a direct quote.[4] Further, the attached probable cause statement identified the assets the State would try to prove defendant possessed.[5] Thus, the information was sufficient to notify defendant of the charge against him and enable him to prepare his defense.

However, if defendant was still uncertain of the details of the charge against him after perusal of the information and the attached probable cause statement, he had a right to a bill of particulars.[6] A bill of particulars is used to provide more specificity of detail to supplement a sufficient information or indictment. The purposes of a bill of particulars are to enable a defendant to better understand the nature of the charge against him and to better prepare his defense.[7]

**2.** Defendant himself admits that a statement alleged to be fatal in a perjury prosecution need not be set forth verbatim in the information.

**3.** *United States v. Ras*, 713 F.2d 311, 318 (7th Cir.1983). *See United States v. Lambert*, 501 F.2d 943, 948 (5th Cir.1974).

**4.** U.C.A., 1953, § 77–35–4(b) (Utah R. Crim. P. 4(b)) states in pertinent part: "Such things as money, securities, written instruments ... may be described by any name or description by which they are generally known or by which they may be identified...."

**5.** U.C.A., 1953, § 77–35–4(b) (Utah R.Crim. P. 4(b)) states in pertinent part: "An information may contain or be accompanied by a statement of facts sufficient to make out probable cause to sustain the offense charged...."

**6.** *State v. Robbins*, Utah, 709 P.2d 771, 773 (1985); U.C.A., 1953, § 77–35–4(b), (e) (Utah R. Crim. P. 4(b), (e)).

**7.** *People v. Aud*, 52 Ill.2d 368, 370, 288 N.E.2d 453, 454 (1972) (quoting *People v. Patrick*, 38 Ill.2d 255, 260, 230 N.E.2d 843, 846 (1967)). *See also United States v. Johnson*, 575 F.2d 1347,

■ As said before, the information filed against defendant, particularly when accompanied by the probable cause statement, was sufficient to notify defendant of the charge against him and to enable him to prepare his defense. Defendant had a course of action available to him if he desired more details of the charge against him: he could request a bill of particulars. Defendant chose not to pursue this course of action. He cannot now be heard to complain that he did not know enough about the charge against him to enable him to prepare his defense.

■ Defendant, however, contends that even if the information on its face was sufficient to notify him of the charge against him, there is a fatal variance between the information and the proof adduced at trial. In order for such a variance to be fatal, thus mandating reversal, it must affect the substantial rights of the accused either (1) by insufficiently informing him of the charges against him such that he is taken by surprise and prevented from presenting a proper defense or (2) by affording him insufficient protection against reprosecution for the same offense.[8]

■ There was not a fatal variance in this case. The evidence adduced at trial to prove the allegations centered around whether defendant had negotiable securities or savings accounts which could be used to satisfy the judgment against him. This evidence equates entirely with the allegations of the probable cause statement. Thus, there was no variance and therefore no prejudice to defendant on this basis.

Defendant, however, further argues that he was taken by surprise when the State, in response to a query by the trial judge, read some of the statements defendant made at the supplemental order proceeding that the State alleged to be false. Defendant contends that those statements are at variance with the information and probable cause statement and that his answers were literally true, albeit somewhat misleading.[9]

At trial, the court asked counsel for the State to read the false statement allegedly made. The following exchange took place:

THE COURT: I want to read what you are saying, claiming he said.

MR. OLSEN: Thank you. Page 18, Line 6.

"Question. *Do you have any money that is available now to satisfy this judgment?*

"Answer. No."

Continuing on to Page 25. . . .

"Question. Well, if your credit is excellent and you can purchase half a million dollars in securities, either by cash or security margin accounts, *are you in a position to make payment on this judgment in this matter?*

"Answer. *No, I am not in a position to make payment.* I don't have any money. I didn't say my credit was impaired. I said, I don't have any money."

Now, Your Honor, there may be others, but primarily *those are the two statements which we submit were false* and are adequately so charged in Count 2.[10]

(Emphasis added.)

Based on this exchange, defendant's contention is that the State's case at trial

---

1356 (5th Cir.1978), *cert. denied,* 440 U.S. 907, 99 S.Ct. 1214, 59 L.Ed.2d 454 (1979).

**8.** *Berger v. United States,* 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935); *United States v. Sheikh,* 654 F.2d 1057, 1066 (5th Cir. 1981), *cert. denied,* 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 852 (1982). *See also Lambert,* 501 F.2d at 947–48 ("Once the evidence is in it must appear, by retrospective comparison of *probata* with *allegata,* that the defendant was deprived of fair notice sufficient to enable him to prepare his defense." (Footnote omitted.)).

**9.** *See Bronston v. United States,* 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973) (a witness may not be convicted of perjury for an answer that is literally true but not responsive to the question asked and arguably misleading by negative implication).

**10.** Counsel for the State later noted that defendant had testified that he did not have any savings accounts, when, in fact, he had three. Defendant also testified that he was not a signatory on any savings accounts, when, in fact, he was.

against defendant was based on testimony that defendant said he had "no money." This contention has no merit. First of all, defendant has taken that statement out of context. The State plainly stated that there were two statements that it alleged were false: (1) defendant stated that he had no money *to satisfy this judgment,* and (2) defendant stated that he was not in a position to make payment on the judgment. The State had also previously stated that it intended to prove that defendant had savings accounts, assets which could have been used to satisfy the judgment against defendant. This is very different from defendant's contention that the State attempted to prove that defendant had "no money."

Second, defendant was manifestly not taken by surprise. At trial, defendant was responsible for raising, and relied in substantial part on, this "no money" theory. In fact, defendant had available and produced expert testimony at trial attempting to prove that "money" was not synonymous with "assets."

Finally, the State did adduce sufficient evidence at trial, primarily by showing that defendant had sufficient funds available to him in a savings account to pay the judgment, to prove that defendant's statements that he was not in a position to make payment were false.

In any event, money can be considered an asset.[11] As the Tenth Circuit Court of Appeals noted in *Salt Lake County v. Utah Copper Co.,* "[T]he word 'money' is

popularly and correctly used as indicating property of every description." [12] In this case, in the context of the questioning above, it is clear that neither the questioner nor defendant intended by use of the term "money" to indicate coins and currency alone. This is proved beyond a reasonable doubt by the question "are you in a position to make payment on this judgment in this matter?" and the response "No, I am not in a position to make payment." The intent of that answer is plain. Defendant was not saying he had no currency and coins; he was saying, "I do not have *any* assets with which I can pay the judgment." [13]

This conclusion is further bolstered by the fact that the entire purpose of the supplemental order proceeding was to inquire into defendant's available assets to pay the judgment against him. Both the presiding judge and plaintiff's attorney specifically stated on the record that the proceeding was to inquire into defendant's assets and his ability to pay the judgment.[14] Thus, defendant's argument that he was taken by surprise and was prevented from making a defense is not borne out by the facts.

■ Defendant's next contention on appeal is that there was insufficient evidence to convict defendant of making a false material statement under oath. U.C.A., 1953, § 76–8–502(1) states: "A person is guilty of a felony of the second degree if in any official proceeding: (1) He makes a false material statement under oath or affirma-

---

11. U.C.A., 1953, § 77–35–4(h) (Utah R. Crim. P. 4(h)) states: "Words and phrases used are to be construed according to their usual meaning unless they are otherwise defined by law...." "Money" is defined by Webster's Third International Dictionary as "something generally accepted as a medium for exchange ... *assets* or compensation ... *readily convertible to cash.* (Emphasis added.) See also U.C.A., 1953, § 77–35–4(b) (Utah R. Crim. P. 4(b)).

12. 93 F.2d 127, 132 (10th Cir.1937) (quoting *Fleck v. Harmstad,* 304 Pa. 302, 309, 155 A. 875, 877 (1931)), cert. denied, 303 U.S. 652, 58 S.Ct. 750, 82 L.Ed. 1112 (1938).

13. The jury was instructed that in order to find defendant guilty, it had to find, beyond a rea-

sonable doubt, that defendant "stated, *or in substance made the statement* that he had no assets wherewith he could satisfy existing judgments." (Emphasis added.)

14. At the supplemental order proceeding, the judge stated, in open court, to plaintiff's counsel: "[Y]ou are entitled to inquire into his assets, his ability to pay the judgment." Plaintiff's counsel, while questioning defendant under oath, asked defendant, "Have you ever been in Third District Court under supplemental order proceedings and interrogated similar to today ... about your assets?" Defendant responded, "Yes, I have."

tion or swears or affirms the truth of a material statement previously made and he does not believe the statement to be true...." "Material" is defined in U.C.A., 1953, § 76–8–501(2) as "capable of affecting the course or outcome of the proceeding.... Whether a statement is material is a question of law to be determined by the court."

It was stipulated by the parties at trial that defendant had been placed under oath at the supplemental order proceeding and that the proceeding was an official proceeding. Thus, it was incumbent upon the State at trial to prove that defendant made a statement at the supplemental order proceeding that was false and material to the proceeding and that defendant did not believe the statement to be true.[15]

When reviewing a sufficiency of the evidence claim, this Court must view the evidence in the light most favorable to the jury verdict.[16] In this case, while there is certainly evidence to the contrary, there is a sufficient quantum of evidence by which a jury could have found defendant guilty as charged.

The evidence that most strongly supports the State's contention that defendant did indeed have assets at the time of the supplemental order proceeding with which he could have satisfied the judgment against him is that concerning a statement savings account on which defendant and his wife were joint signators. On January 18, 1978, the day of the supplemental order proceeding, this account contained $27,410.17. The entire amount was withdrawn by defendant's wife several hours after the supplemental order proceeding. The funds were withdrawn after defendant phoned his wife following the supplemental order proceeding and asked her to withdraw them. After the funds were withdrawn, defendant's wife purchased a cashier's check in the amount of $27,410.17, which she then turned over to defendant. On January 20, defendant signed both his wife's and his own names to the cashier's check and pur-

chased three additional cashier's checks: $10,410.17 payable to himself, $5,000 payable to Brown Securities for the purchase of stock in the name of one of defendant's nominees, and $12,000 payable to Holt Whitmer Interiors for furnishings for the Strands' new home. Thus, defendant, for his own personal use, had spent over $15,-000 of the withdrawn amount within two days after the supplemental order proceeding. Further, he had paid $12,000 on an account in his name for furnishings for the Strands' home. The total withdrawal, $27,-410.17, was more than sufficient to satisfy the judgment of $23,000 against defendant.

There is no question that defendant presented evidence to contradict the conclusion that the funds in the joint account belonged to defendant. However, it was the jury's prerogative to decide whose evidence to believe. From the above evidence adduced by the State, the jury certainly could have drawn the conclusion that defendant had assets at least in the amount of $27,410.17 that could have been used to satisfy the judgment against him. Further, given defendant's actions following the supplemental order proceeding, particularly defendant's act of phoning his wife immediately following the proceeding and requesting her to draw the funds from the account, the jury could reasonably have concluded that defendant himself did not believe his statement that he had no money to satisfy the judgment and that he was not in a position to make payment on the judgment.

Defendant's next point on appeal is that the trial court's refusal to submit to the jury the question of materiality of the alleged false statement denied defendant his constitutional right to a trial by jury.

U.C.A., 1953, § 76–8–501(2) states in pertinent part: "Whether a statement is material is a question of law to be determined by the court." Thus, the trial court's action in refusing to submit the question of materiality to the jury was entirely consist-

---

**15.** *See* Model Penal Code § 241.1 comment 3, at 114–15 (1962).

**16.** *E.g., State v. McCardell,* Utah, 652 P.2d 942, 945 (1982).

ent with statutory law. The real question then is whether the statute satisfies constitutional standards.

The federal and state constitutions establish the right to a trial by jury in criminal cases.[17] These provisions have been uniformly interpreted as entitling a defendant to a jury determination of all factual elements of a crime.[18] Questions of law are to be determined by the trial court.[19] A significant majority of courts that have considered this question have held that materiality is a question of law to be decided by the trial court.[20] In fact, the United States Supreme Court, in *Sinclair v. United States*,[21] stated: "Upon reasons so well known that their repetition is unnecessary it is uniformly held that ... the materiality of what is falsely sworn, when an element in the crime of perjury, is one for the court.[22]

■ Since *Sinclair*, the federal courts have uniformly held that materiality is a question of law to be decided by the trial court.[23] A majority of state courts have also followed this reasoning.[24] We see no reason to find otherwise. Therefore, we hold that materiality involves a legal relationship between certain facts that must be found by the trier of fact and as such is a question to be determined by the trial court.

■ Defendant also argues on appeal that since the trial court did not make a specific finding of materiality on the record, defendant's conviction cannot stand. This contention is also without merit. The trial court, as noted above, correct-

ly ruled on the record that materiality is a question to be determined by the trial court. By submitting the case to the jury, the judge had clearly made his determination of materiality. Further, if defendant had had any question concerning the trial judge's determination, defendant should have raised it to the court prior to the instruction of the jury. By failing to so raise it to the trial court, defendant has waived his right to raise it now.

Finally, defendant argues that the State failed to establish that his offense occurred within the applicable statute of limitations. This contention is frivolous. The Court, in *State v. Strand*, Utah, 674 P.2d 109 (1983), ruled on the very contention defendant now raises and held that the information on which defendant's prosecution was based was filed within the applicable statute of limitations.

Defendant's conviction is affirmed.

STEWART, DURHAM and ZIMMERMAN, JJ., concur.

HOWE, Justice (concurring):

I concur but desire to point out that the defendant is correct in his assertion that he did not testify at the supplemental order proceeding that he had "no assets" as charged in count II of the information. To the contrary, he testified that he had several assets which he enumerated. However, at trial the State's case against the defendant under count II was that he falsely testified that he did not have "any money." At the close of the presentation of the

**17.** U.S. Const. amends. VI & XIV; Utah Const. art. I, § 10.

**18.** *E.g., State v. Green*, 78 Utah 580, 589–90, 6 P.2d 177, 181 (1931).

**19.** *See, e.g.,* 75 Am.Jur.2d *Trial* § 319, at 391–92 (1974). *Cf. State v. Chambers*, Utah, 709 P.2d 321, 326–27 (1985).

**20.** *E.g., United States v. Prantil*, 764 F.2d 548, 557 (9th Cir.1985); *United States v. Bridges*, 717 F.2d 1444, 1448 & n. 18 (D.C.Cir.1983), *cert. denied*, 465 U.S. 1036, 104 S.Ct. 1310, 79 L.Ed.2d 708 (1984); *State v. Sands*, 123 N.H. 570, 591, 467 A.2d 202, 215 (1983). *See also* 4 C. Torcia, 4

Wharton's Criminal Law § 618, at 345 (14th ed.1981); Annot., 62 A.L.R.2d 1027, 1027–28 (1958); Model Penal Code § 241.1(2) (1962).

**21.** 279 U.S. 263, 49 S.Ct. 268, 73 L.Ed. 692 (1929).

**22.** 279 U.S. at 298, 49 S.Ct. at 273 (citations omitted).

**23.** *E.g., Prantil*, 764 F.2d at 557.

**24.** *E.g., Sands*, 123 N.H. at 591–94, 467 A.2d at 215–16. *Contra Commonwealth v. McDuffee*, 379 Mass. 353, 398 N.E.2d 463 (1979).

State's case, the defendant moved to dismiss count II on the ground that there was a variance between what the State had charged and what it had proved. The defendant argued that assets are not synonymous with money and that even if the court allowed the variance, money did not include funds on deposit in a savings account. He also argued that the savings account was the property of his wife. The motion to dismiss was denied, and the defendant presented his evidence regarding the account. It is clear that the defendant was not taken by surprise nor was any advantage taken of him because of the variance.

I agree with the defendant that money is but one form of assets and that testifying that he did not have "any money" was not the same as testifying that he had "no assets." However, in light of the development at trial, the defendant was not prejudiced by the variance and had full opportunity to present evidence and convince the jury that he indeed did not have any money. Rule 30, Utah R. Crim.P., mandates the disregard of any variance which does not affect the substantial rights of a party.