THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DEAN POWELL, Defendant-Appellant.

Fifth District    No. 5—86—0103

Opinion filed September 18, 1987.

Daniel M. Kirwan and Julia M. Gentile, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Alan C. Downen, State's Attorney, of McLeansboro (Kenneth R. Boyle, Stephen E. Norris, and Gerry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KASSERMAN delivered the opinion of the court:

Defendant, Dean Powell, was convicted of perjury (Ill. Rev. Stat. 1985, ch. 38, par. 32—2) on September 30, 1985, after a jury trial in the circuit court of Hamilton County. Defendant was sentenced on February 20, 1986, to serve a three-year term of imprisonment, to be served consecutively to sentences previously imposed in the circuit court of Hamilton County.

Defendant has perfected the instant appeal, raising five issues: (1) whether he was proved guilty beyond a reasonable doubt; (2) whether the failure to instruct the jury on the element of materiality violated due process standards; (3) whether it was improper for the trial judge to preside at both the perjury trial and the previous guilty plea hearing where defendant allegedly made the perjurious statements; (4) whether the judgment order clearly defines defendant's sentence; and (5) whether defendant is entitled to credit against his

sentence for time spent in custody.

The evidence at trial was as follows: Bill Warren, sheriff of Hamilton County, testified that Irvin's Jewelry Store in McLeansboro, Illinois, had been burglarized on October 1, 1984. Jewelry valued at approximately $60,000 had been taken and very little of it had been recovered.

The jury was informed that the parties had stipulated that People's exhibit No. 1 was a true and accurate copy of excerpts from defendant's testimony at a hearing on November 29, 1984, in the circuit court of Hamilton County, at which defendant pleaded guilty to the burglary of Irvin's Jewelry Store. The exhibit consisted of one full page and excerpts from two other pages of the transcript. Although the exhibit was admitted into evidence at trial, it is not included in the record on appeal.

Michael Mezo testified at the trial in the case at bar that he pleaded guilty to receiving stolen property on the basis of his possession of three items in the burglary of Irvin's Jewelry Store. Mezo related that on October 2, 1984, defendant asked Mezo to accompany him on a trip to Oklahoma, the purpose of which was to drive defendant's brother, Alan Powell, to his home. Early the next day the defendant, defendant's wife, defendant's brother, and Mezo left for Oklahoma. On the way they stopped for gasoline in Missouri. At this time Mezo saw pillowcases in the trunk. The pillowcases appeared to be full. Defendant pulled out three watches which he gave to Mezo. During the trip Mezo heard defendant ask his brother whether arrangements had been made to sell the jewelry. Alan Powell, defendant's brother, responded in the affirmative. After their arrival in Oklahoma at the home of Alan Powell's in-laws, defendant gave Mezo a gold wedding band. Defendant and Mezo thereafter each pawned a ring at a pawn shop. Mezo testified that defendant eventually sold the remaining contents of the pillowcases.

Larry Huggins, special agent with the Illinois Division of Criminal Investigation, testified that he spoke with defendant on March 1, 1986, at Menard Correctional Facility. Huggins explained that he was investigating Mezo's role in the McLeansboro burglary. Defendant told Huggins that he, his wife, his brother, and Mezo left Hamilton County and arrived in Tulsa, Oklahoma, on October 4, 1984. Huggins testified that defendant stated that later "they" sold some of the burglary proceeds to two people in Tulsa.

Defendant testified at the trial of the instant cause that he had been convicted of the burglary of Irvin's Jewelry Store. Defendant stated that he had planned to drive his brother, Alan, home to Okla-

homa. Defendant stated that Mezo approached defendant and asked if he could go along, since he could make a connection in Oklahoma to sell the jewelry. According to defendant, his wife, his brother, and Mezo traveled to Oklahoma and after their arrival Mezo made arrangements with some of Alan Powell's friends to sell the jewelry. Defendant testified that he had nothing to do with the sale of the jewelry. Defendant stated that Mezo made arrangements at an airport to fly to Las Vegas. Defendant assumed that Mezo sold the jewelry because Mezo's luggage was lighter and he had more money. Defendant admitted that some of the jewelry from the burglary was found at defendant's home in Hamilton County.

Defendant acknowledged that the following questions were asked of him by the State's Attorney and answered by him at the guilty plea hearing held prior to his being charged with perjury:

"Q. And what became of those items when you moved them?

A. I have no idea. Mr. Mezo came a couple of days later and got them and got rid of them.

Q. You took the items to Dale to your residence?

A. Yes.

Q. And Mr. Mezo came down a few days later and took them?

A. Yes."

The defendant stated that his responses were true at the time he made them. On cross-examination defendant stated that the jewelry was sold in Oklahoma but testified that he did not know who got the jewelry or where it went, stating, "I have no idea where they went to."

People's exhibits Nos. 2 through 8, described by the State's Attorney as being certified copies of the defendant's prior convictions, were admitted into evidence. However, those exhibits are also not included in the record on appeal.

At a hearing on defendant's motion for a directed verdict, the circuit court decided, as a matter of law, that defendant's statements previously made at the hearing on his plea of guilty were material.

Following closing arguments, instructions and deliberations, the defendant was found guilty of perjury. On February 20, 1986, the circuit court sentenced defendant to a three-year term of imprisonment to run "consecutively with sentences previously imposed by the circuit court of Hamilton County, Illinois."

■■ ■ Defendant first urges that he was not proved guilty beyond a reasonable doubt because the State failed to prove the falsity

of defendant's statement and also because the State failed to prove that the statements were material to the issue in question. In this regard, the statute concerning the offense of perjury provides in pertinent part as follows:

"A person commits perjury when, under oath or affirmation, in a proceeding or in any other matter where by law such oath or affirmation is required, he makes a false statement, material to the issue or point in question, which he does not believe to be true." Ill. Rev. Stat. 1985, ch. 38, par. 32—2(a).

Defendant asserts that his sworn testimony at the guilty plea hearing and his statement to Huggins are not inconsistent—"[t]he defendant thus may have believed that he was being asked about its [the jewelry's] final, rather than its immediate disposition." Defendant asserts, in the alternative, that even if there is an inconsistency, the State failed to prove that it was the testimony at the guilty plea hearing that was false. However, defendant's contentions fail to account for the significance of Mezo's testimony.

Mezo testified that during the trip to Oklahoma, defendant was in charge of the jewelry stolen in the burglary and that defendant sold the jewelry with his brother's assistance. It is apparent that when defendant testified at the guilty plea hearing that he "[had] no idea" what became of the jewelry and that "Mr. Mezo came a couple of days later and got them and got rid of them," defendant was denying any connection to the jewelry once he took the jewelry home. Even if defendant's answers were interpreted only as a denial of knowledge as to the jewelry's ultimate disposition, those answers are contradictory to Mezo's testimony. Furthermore, Huggins testified that defendant told him that "they" sold the jewelry in Tulsa. The jury could have interpreted "they" to include defendant himself.

We conclude that this evidence was sufficient for the jury to find that defendant testified falsely at the guilty plea hearing. When a reviewing court is confronted with a challenge to the sufficiency of the evidence, it is not its function to retry the defendant. In *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267, our supreme court stated:

"As the United States Supreme Court observed in *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' The court went on to note that, '[o]nce a defendant has been found

guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.' (Emphasis in original.) 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789." 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277.

■ Defendant further contends that he was not proved guilty beyond a reasonable doubt because the State failed to prove that his allegedly false testimony was material to an issue in question. This contention is premised upon defendant's assertion that the materiality issue is a question of fact for the jury.

The State urges that defendant has waived the latter contention by failing to object to the instructions given to the jury. However, since Supreme Court Rule 451(c) provides that "substantial defects are not waived by failure to make timely objections thereto if the interests of justice require" (107 Ill. 2d R. 451(c); *People v. Ogunsola* (1981), 87 Ill. 2d 216, 222, 429 N.E.2d 861, 864), we will address defendant's contention.

Defendant maintains that a ruling by the trial judge on the materiality issue improperly invades the fact-finding function of the jury and results in a violation of due process under the sixth amendment right to a jury trial. (U.S. Const. amend. VI.)

The test for the determination of materiality is whether the false testimony has "a natural tendency to influence the trier of fact" on the issue or point in question (*People v. Mason* (1978), 60 Ill. App. 3d 463, 466, 376 N.E.2d 1059, 1061), or, stated differently, whether the false statement "would or could influence the trier of fact in its deliberations on the issues presented to it" (*People v. Toolen* (1983), 116 Ill. App. 3d 632, 651, 451 N.E.2d 1364, 1378). An overwhelming majority of jurisdictions, including Illinois, hold that the materiality issue is generally a question of law for the court. *Sinclair v. U.S.* (1929), 279 U.S. 263, 298, 73 L. Ed. 692, 699-700, 49 S. Ct. 268, 273; *People v. Glenn* (1920), 294 Ill. 333, 338, 128 N.E. 532, 534; *People v. Toolen* (1983), 116 Ill. App. 3d 632, 651, 451 N.E.2d 1364, 1378; *State v. Sands* (1983), 123 N.H. 570, 592, 467 A.2d 202, 215-16; Annotation, 37 A.L.R.4th 948 (1985).

Defendant relies on the cases of *In re Winship* (1970), 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068, and *Commonwealth v. McDuffee* (1979), 379 Mass. 353, 398 N.E.2d 463, in support of his position. The court in *In re Winship* stated: "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with

which he is charged." *In re Winship* (1970), 397 U.S. 358, 364, 25 L. Ed. 2d 368, 375, 90 S. Ct. 1068, 1072-73.

■ However, the determination of materiality involves the relationship between an allegedly false statement and the nature of the proceeding at which it was made. We conclude that this determination is one best suited for a court with its legal expertise and is therefore a question of law.

*Commonwealth v. McDuffee* (1979), 379 Mass. 353, 398 N.E.2d 463, relied upon by defendant, represents the minority position. The court there stated:

> " 'While as lawyers we are accustomed to thinking of materiality as a matter for judicial ruling, there is nothing in the nature or quality of materiality which makes it essentially a legal concept or removes it from the ken of a layman's discernment and determination. The word "material" and the idea of materiality are commonly understood, and every day judgments on a variety of subjects are made upon the basis of a layman's sense of materiality.' [Citation.] The judge should instruct the jury on the law and their role in applying the law to the facts as they so find them. It is not beyond a layman's judgment whether the statements in question had a 'reasonable and natural tendency' to influence the pertinent determination. [Citation.]" 379 Mass. 353, 364-65, 398 N.E.2d 463, 469-70.

We disagree with this statement of the law and decline to overturn established precedent in this State.

■ We next consider whether the State failed to prove the materiality of defendant's false statements. As stated earlier, the test is whether the false statements "would or could influence the trier of fact in its deliberations on the issues presented to it." (*People v. Toolen* (1983), 116 Ill. App. 3d 632, 651, 451 N.E.2d 1364, 1378.) The State must therefore prove the falsity of the statement and must also establish the issue that was in dispute in the former proceeding. Ill. Rev. Stat. 1985, ch. 38, par. 32—2(a); *People v. Mason* (1978), 60 Ill. App. 3d 463, 465, 376 N.E.2d 1059, 1061.

■ In the case at bar, the prior proceeding was defendant's guilty plea proceeding. The purpose of that proceeding was both to ascertain the propriety of the entry of defendant's guilty plea to burglary and to impose an appropriate sentence. It is apparent that defendant's cover-up of his further involvement with the burglary proceeds was designed to influence the circuit court's imposition of a less severe sentence. This is an objective analysis and does not de-

pend on proof that defendant's testimony actually influenced this particular judge. (See 70 C.J.S. *Perjury* sec. 13 (1987).) Therefore, we conclude that the circuit court properly determined that defendant's false testimony was material to issues involved in the guilty plea proceeding.

■ Defendant, relying on the case of *People v. Briddle* (1980), 84 Ill. App. 3d 523, 405 N.E.2d 1357, *cert. denied* (1981), 450 U.S. 986, 67 L. Ed. 2d 823, 101 S. Ct. 1527, next contends that it was improper for Judge Underwood to preside at both the guilty plea proceeding and at the perjury trial because the judge was a potential witness at the trial. Defendant asserts that this situation deprived him "of his constitutional right to cross-examine one of the chief witnesses in the case" and that "the trial judge was no longer a disinterested party and his neutrality was necessarily compromised." See also Supreme Court Rule 63(C)(1)(e)(iv) (107 Ill. 2d R. 63(C)(1)(e)(iv)).

The State asserts that defendant has waived this issue by his failure to move for a substitution of judge and by his failure to include the issue in his post-trial motion. Nevertheless, we will address defendant's contention pursuant to Supreme Court Rule 615(a). 107 Ill. 2d R. 615(a).

Initially, we note that there is no allegation or evidence that the judge relied on facts or circumstances from the guilty plea proceeding that were not presented at trial. Therefore, there is no support for defendant's contention that the judge was an interested party and that his neutrality was compromised.

The State also responds that since the materiality issue was one of law, the trial judge could decide it on the basis of whether the false statements in evidence at the trial could or would influence a reasonable trial judge and not whether such statements in fact influenced him, thus eliminating the necessity of the trial judge appearing as a witness. Since we have concluded that the trial judge properly determined, on the basis of the evidence presented at the trial, that defendant's false statements were material to the issues in the guilty plea proceeding, defendant has suffered no prejudice from the judge presiding at both proceedings.

■ In *People v. Briddle* (1980), 84 Ill. App. 3d 523, 405 N.E.2d 1357, *cert. denied* (1981), 450 U.S. 986, 67 L. Ed. 2d 823, 101 S. Ct. 1527, relied upon by defendant, the defendant previously was acquitted of speeding but later was convicted of perjury in connection with false testimony that he had given at the speeding trial concerning the description of his automobile. While the defendant's false testimony did not appear on its face to be material to the speeding

charge, the judge who presided at the speeding trial testified at the perjury trial that the resulting discrepancy between the defendant's description of the automobile he was driving and the police officer's description caused him to acquit the defendant. Thus, the testimony of the speeding trial judge at the perjury trial was necessary in order to establish the materiality of defendant's alleged perjured testimony. 84 Ill. App. 3d 523, 524-25, 405 N.E.2d 1357, 1358.

*Briddle* is distinguishable from the case at bar, however. First, the materiality of defendant's false statement at the guilty plea hearing in the case at bar is apparent without resort to evidence of whether or not the trial judge actually was influenced in imposing sentence. Second, defendant made no attempt of record to request the judge to testify or to move for a substitution of judges. We conclude, therefore, that there has been no violation of defendant's constitutional right of cross-examination.

■ Defendant further contends that this cause must be remanded because the judgment order does not clearly define the limits of his sentence. The judgment order states: "This sentence shall run *consecutively* with sentences previously imposed by the Circuit Court of Hamilton County, Illinois." (Emphasis in original.)

"[A consecutive sentence] must be of such certainty that the commencement of the second and the termination of the first sentence may be ascertained from the record." (*People v. George* (1979), 75 Ill. App. 3d 140, 144, 393 N.E.2d 1182, 1185.) Defendant concedes that the record identifies four sentences previously imposed by the circuit court of Hamilton County, all on the same date, as part of a negotiated plea of guilty. Defendant was sentenced to 10 years for armed violence in No. 84—CF—47, 10 years for attempted armed robbery in the same case, 10 years for armed robbery in No. 84—CF—52, and 7 years for burglary in No. 84—CF—48. While the judgment order does not specify to which of these sentences the sentence in the case at bar is to run consecutively, the circuit court did state the following at the sentencing hearing in the case at bar: "The net effect of this [three-year consecutive sentence] is that it will only add one and a half years to whatever sentence you will have to serve ***." It is thus apparent from the court's oral pronouncement of sentence that defendant's sentence is to be served consecutive to the 10-year sentences imposed in Nos. 84—CF—47 and 84—CF—52.

■ Defendant's final contention is that he is entitled to at least 310 days of credit against his sentence. The record indicates that at the time defendant was charged with this perjury offense he was serving the prison sentences imposed in the previously described

cases (Nos. 84—CF—47, 84—CF—48, and 84—CF—52). The information charging defendant with perjury was filed on March 11, 1985, and bail was set that same day at $50,000. There is no indication in the record that defendant posted a bail bond. On April 17, 1985, defendant was served with the arrest warrant on the perjury charge while he was incarcerated in Menard Correctional Center. Defendant remained incarcerated in Menard except for periods during which, pursuant to writs of *habeas corpus ad prosequendum*, defendant was released to the custody of the Hamilton County sheriff for his first appearance on April 17 and 18, 1985, for a preliminary hearing setting on June 26 and 27, 1985, for trial on September 27 through 30, 1985, and for the sentencing hearing on February 19 and 20, 1986.

The State asserts that since the defendant was serving sentences for other convictions at all times before sentencing on the perjury charge, he is not entitled to credit for that period of time against the sentence in the case at bar.

Section 5—8—7(b) of the Unified Code of Corrections provides that a defendant is entitled to credit against his sentence "for time spent in custody as a result of the offense for which the sentence was imposed." (Ill. Rev. Stat.1985, ch. 38, par. 1005—8—7(b).) Thus, the question is whether defendant's simultaneous custody was "time spent in custody as a result of the [perjury] offense." We have recently concluded on similar facts that a defendant is entitled to such credit. (*People v. Higgerson* (1987), 157 Ill. App. 3d 564, 510 N.E.2d 574.) Therefore, this cause must be remanded for the purpose of issuing an amended mittimus and judgment order reflecting that defendant is entitled to 310 days' credit against his sentence of imprisonment.

Affirmed in part; remanded with directions.

KARNS, P.J., and WELCH, J., concur.