THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LORY OLINGER, Defendant-Appellant.

Third District   No. 3—92—0259

Opinion filed June 11, 1993.

Verlin R. Meinz, of State Appellate Defender's Office, of Ottawa, for appellant.

Raymond Kimbell III, State's Attorney, of Galesburg (John X. Breslin and Rita Kennedy Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

Following a bench trial, the defendant, Lory Olinger, was convicted of two counts of perjury. She was sentenced to consecutive terms of five and three years in prison and fined $10,000. On appeal, the defendant challenges the sufficiency of the State's evidence to support her conviction. Because we find that the State failed to prove the materiality of the defendant's false statements, we now reverse her convictions.

On May 21, 1991, the defendant was indicted on two counts of perjury. Both counts involved the defendant's failure to list a certain asset on an affidavit of assets and liabilities. Count I alleged that the defendant filed an affidavit of assets and liabilities in a forfeiture proceeding (91—MR—4). The defendant failed to list rental income from property located on lot No. 31, Country Elms Trailer Park, in Galesburg. Count II alleged that the defendant filed an affidavit of assets and liabilities in a criminal proceeding against her (91—CF—90), in which she failed to list a certain house trailer as an asset.

The defendant waived her right to a jury trial, and the matter proceeded as a bench trial on December 16 and 20, 1991, and January 20, 1992. The State called several witnesses regarding the affidavits that the defendant signed and the trailer and the income received from it. David Reid Clark, an attorney and notary public, testified that he met with the defendant on March 25, 1991, regarding the affidavit filed in the forfeiture proceeding. Clark testified that the affidavit was filed to establish indigency for the purpose of waiving the 10% bond requirement required in a forfeiture proceeding. Clark had the defendant review the information on the affidavit and then sign it. Clark then notarized and filed the affidavit, and later filed a motion to proceed without cash bond.

Clark also testified regarding the affidavit filed in the criminal proceeding. On May 20, 1991, Clark met with the defendant regarding that affidavit. The affidavit was filled out and filed for the purpose of establishing indigency so that the defendant could have the public defender appointed to represent her. The defendant began to fill out the form in Clark's presence; Clark then left the room. The defendant's husband then brought the signed form out to Clark. When Clark later handed the form to the prosecutor, the prosecutor

asked that the form be notarized. Clark then called his secretary, had her get his notary stamp, met her halfway between his office and the courthouse, notarized the form, and then had his secretary carry the form to the prosecutor. Clark testified that, with respect to both of the affidavits, he briefly discussed the information with the defendant and informed her that she did not need to list income from an ongoing operation if it was offset by expenses.

Kenneth Nelson, a friend of the defendant, testified about a meeting he had with the defendant in January 1991, about properties to be put into his name because of potential forfeiture problems. One of these properties was the mobile home at lot 31 in Country Elm Estates. Nelson had title of the trailer transferred to him, but did not pay for it or receive anything from it. The title history of the trailer showed that the trailer went to Nelson from Marjorie Waugh. Nelson did sign one rent receipt, but did so at the defendant's direction.

The State's next two witnesses, Ed Smith and his wife, Donna, both testified that they recalled renting a trailer at lot 31, Country Elm Estates, from January to March 1991. They rented the trailer from the defendant and her husband. They paid $180 rent in January, February, and March, and also paid a $100 deposit in January. They moved out in April 1991.

Ruby Conces, the resident manager at Country Elm Estates Mobile Home Park, testified that defendant called her in either December 1990 or January 1991. The defendant's call regarded a trailer she had purchased from Rebecca Coleman, the daughter of Marjorie Waugh. Conces testified that the defendant began paying $90 a month for lot rental and did so from January to June. The defendant told Conces that she rented the trailer to Donna Smith in January. According to Conces, the defendant later rented the trailer to Melissa Payne, who had to be evicted, and then sold the trailer to Ben Dragoo in July.

Melissa Payne testified that she rented the trailer from the defendant beginning on May 16. She rented the trailer after responding to an ad in the paper. The rent was to be $200 a month, with $40 to be paid by Payne and $160 by General Assistance. The defendant served Payne with an eviction notice in late June or early July; the notice mentioned nonpayment of rent.

The State called two other witnesses to testify regarding the trailer. Rebecca Johnson testified that she sold the trailer to the defendant and her husband, Jim Olinger, in December 1990. She sold the trailer for $375 and an ounce of cannabis. Ben Dragoo recalled buying the trailer from the Olingers in June 1991. He paid $1,000 for

the trailer. The Olingers also showed Dragoo a receipt, indicating that they had paid taxes on the trailer.

Gregg Gummerson, president of the Galesburg Burlington Credit Union, testified regarding a loan made to the defendant. The defendant took out the loan for the purpose of purchasing a Winnebago on October 17, 1989. The total amount financed was $4,126.65, to be paid off over two years in monthly installments of $199.89 The defense objected to this testimony on relevancy grounds, because it involved property not mentioned in the indictment. The court allowed the testimony for the limited purpose of showing that she owned the property.

The defendant testified that Ken Nelson was the owner of the trailer and that she and her husband merely managed it for him. The defendant testified that, with respect to both of the affidavits, she calculated receipts and expenses and did not list anything that broke even or lost money. She stated that she did so after asking Clark a question about rental income. The defense introduced as an exhibit a summary of expenses on the trailer. The defendant testified that she also used the "plus or minus" approach with respect to the Winnebago and did not list it because of the amount owed on it. When asked on cross-examination where on the affidavit it stated to only list assets that are profitable, the defendant responded that she did not know. The State also cross-examined the defendant with respect to other assets allegedly owned by her. The defense again objected on the ground that this examination did not concern the trailer. The defendant's husband also testified, substantially corroborating the defendant's story. On cross-examination, he admitted that he was a convicted felon.

In rebuttal, the State produced witnesses who testified regarding a duplex owned by the defendant. The defense unsuccessfully tried to bar this testimony as irrelevant. The defense then recalled the defendant to the stand in order to explain her various expenses related to the duplex property. The defendant claimed that the property either broke even or lost money.

The court found the defendant guilty. The trial judge stated that the case turned on a question of credibility, and he found the testimony of the defendant and her husband not credible. The court sentenced the defendant to consecutive terms of five and three years' imprisonment, and ordered her to pay a fine of $10,000. This appeal followed.

The defendant argues on appeal that her conviction must be reversed because the evidence shows that she acted on advice of counsel

in filling out the affidavits, because there were irregularities in the execution of the affidavits, and because the State failed to prove the materiality of her false statements. We agree with the defendant that the State failed to prove the materiality of the omissions on the affidavits and therefore see no reason to discuss the issues regarding advice of counsel and irregularities in execution.

The charges against the defendant were brought pursuant to section 32—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, par. 32—2). This section defines the offense of perjury as follows:

"A person commits perjury when, under oath or affirmation, in a proceeding or in any other matter where by law such oath or affirmation is required, he makes a false statement, material to the issue or point in question, which he does not believe to be true." (Ill. Rev. Stat. 1989, ch. 38, par. 32—2(a).)

In order to establish a perjury charge, the State must establish that the defendant made a false statement, that the false statement was material to the issue in question, and that the defendant did not believe the statement to be true. (*People v. Columbo* (1983), 118 Ill. App. 3d 882, 455 N.E.2d 733.) The test for the determination of materiality in a perjury prosecution is whether the false testimony has a natural tendency to influence the trier of fact on the issue or point in question. (*People v. Powell* (1987), 160 Ill. App. 3d 689, 513 N.E.2d 1162.) The materiality issue is a question of law for the court. *Powell*, 160 Ill. App. 3d 689, 513 N.E.2d 1162.

The defendant initially contends that the State failed in its burden of proof as to materiality because the State did not present argument or proof as to what the issues were in the forfeiture and criminal proceedings. Nevertheless, it is apparent that the affidavits in both proceedings were filed for the purpose of establishing indigency. Therefore, the State's burden of proof on the materiality question was whether the defendant's failure to list the rental income from the trailer (in the forfeiture proceeding) and the trailer itself (in the criminal proceeding) had a natural tendency to influence the court on the question of indigency. The State failed in this respect.

Initially, it must be noted that the State limited itself in the indictment to the defendant's failure to list rental income from the trailer as of March 25, 1991 (count I), and the trailer itself (count II). We cannot, as the State wishes us to do, consider the defendant's failure to list other property, or the defendant's rental income in count II, or rental income from different time periods. The defendant argues that the omissions alleged in the indictment were so minimal that they could not have affected the determination of indigency. The State re-

sponds that, if the court could have considered those assets, the defendant might not have been found indigent. We disagree.

With respect to count I, calculating the income and expenses on the trailer, in the manner requested by the State in its brief, yields a net gain to the defendant of $123.87. The affidavit filed by the defendant showed assets of $377 per month in public aid and $23.27 in a bank account. The affidavit showed liabilities of $12,000 in bills and a $297 monthly housing expense. The State utterly failed to show how the additional income of $123.87 over a three-month period would have been material to a determination of indigency. This omission by the defendant could not have influenced the trier of fact with respect to the question of indigency.

With respect to count II, the State argues that if the defendant had listed the trailer as an asset, she might have been found nonindigent for purposes of appointed counsel. Assuming the trailer was worth $1,000, the sum for which it was sold in June 1991, the defendant's total assets, according to the affidavit filed in the criminal proceeding, would have totaled $1,775, plus $337 per month in public aid. The defendant's liabilities included an outstanding mortgage of $29,500 and other liabilities in the amount of $13,000. Again, the State failed to prove how the failure to list this one asset could have influenced the determination of the question of indigency.

The State went to great lengths in this proceeding to establish the falsity of the defendant's assertion with regard to ownership of the trailer, but seemed to ignore the issue of materiality. It is not apparent from the record whether the trial judge made a finding with respect to materiality. However, considering the defendant's financial picture, such a finding would be erroneous as a matter of law.

Because we find that the State failed in its burden of proof with respect to the materiality of the defendant's omissions on her affidavits, we reverse the defendant's convictions of perjury.

Reversed.

McCUSKEY, P.J., and LYTTON, J., concur.