THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DALE GAWLAK, Defendant-Appellant.

First District (3rd Division)    No. 1—93—4247

Opinion filed November 1, 1995.

Patrick A. Tuite and Thomas M. Leinenweber, both of Chicago, for appellant.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, So-

licitor General, and Arleen C. Anderson and Bradley P. Halloran, Assistant Attorneys General, of counsel), for the People.

JUSTICE TULLY delivered the opinion of the court:

After a bench trial, defendant, Dale Gawlak, was found guilty of making a false material statement concerning hazardous waste in violation of section 44(h)(2) of the Environmental Protection Act (Ill. Rev. Stat. 1991, ch. 111½, par. 1044(h)(2) (now 415 ILCS 5/44(h)(2) (West 1994))), unlawful destruction of a hazardous waste record in violation of section 44(h)(3) of the Environmental Protection Act (Ill. Rev. Stat. 1991, ch. 111½, par. 1044(h)(3) (now 415 ILCS 5/44(h)(3) (West 1994))) and forgery in violation of section 17—3(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1991, ch. 38, par. 17—3(a)(1) (now 720 ILCS 5/17—3(a)(1) (West 1994))) and sentenced to one year's probation. It is from the judgment of conviction entered by the circuit court that defendant now appeals to this court pursuant to section 6 of article VI of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Supreme Court Rule 603 (134 Ill. 2d R. 603).

For the reasons which follow, we affirm in part and reverse in part.

## FACTUAL BACKGROUND

The facts in this case are undisputed. In February 1991, defendant worked as a materials handling supervisor for Chemical Waste Management, Inc. (CWM), at its plant at the intersection of Stony Island Avenue and 117th Street in Chicago. Defendant's duties included overseeing the movement and inventory of containers of hazardous waste that were sent to the Stony Island plant for incineration. The plant incinerated both hazardous and nonhazardous waste from other companies, as well as waste created by the plant itself.

In February of 1991, there had been an explosion in the kiln of the incinerator at the Stony Island plant which rendered it inoperable, with the exception of periodic tests. As a consequence of the explosion, CWM entered into a consent decree with the Illinois Environmental Protection Agency (IEPA) calling for on-site monitoring.

The consent decree between CWM and IEPA provided for a reduction in the amount of stored hazardous waste at the plant. It provided that there should not be more than 55,000 gallons of hazardous waste at any given time, in anticipation of the waste being incinerated. Prior to the consent decree, CWM had been permitted to keep up to 136,000 gallons of hazardous waste stored on site.

Pursuant to the Environmental Protection Act (hereinafter Act)

(Ill. Rev. Stat. 1991, ch. 111¹/₂, par. 1001 *et seq.* (now 415 ILCS 5/1 *et seq.* (West 1994))), IEPA promulgated regulations which allow hazardous waste created on site to be kept on site for up to 90 days before it is considered "stored" and thus counted toward the limited amount of hazardous waste a disposal site may lawfully store on site in anticipation of disposal. In other words, prior to 90 days, such waste created on site in the process of disposing of other waste brought into the plant from outside sources does not go "on the books" as inventory.

To determine how long hazardous waste has been on site, stickers detailing the accumulation date, the date the barrel first received waste and the date on which the waste is either shipped to the storage facility or generated at the storage facility are attached to each barrel of waste. The stickers also identify the contents of the barrels.

To determine how much waste was on site at any one time, CWM took inventory on theoretical, rather than actual, volume. After the entering of the consent decree, CWM ordered defendant and other employees to count the number of barrels on site and multiply them by their capacity. Previously, defendant and others would determine inventory by opening each container to check the actual volume of the hazardous waste contained.

In September of 1991, CWM wanted the site to have less than 55,000 gallons of waste on site, and it attempted to reduce the amount of waste on hand. Initially, the desired reduction was accomplished by shipping some of the barrels from the Stony Island plant to other disposal sites run by CWM or by burning the waste in the incinerator. By August of 1991, neither option was available as the other CWM plant could not take any more waste and the on-site incinerator was inoperable. Defendant testified that nevertheless he was directed by his supervisors to reduce the amount of waste on site.

On December 28, 1991, defendant along with two other CWM employees, Jennifer Davis, an operations clerk, and Nicholas Bajovich, a repacker, performed an inventory of the hazardous waste stored at the Stony Island facility. The inventory revealed that the plant was very close to the 55,000-gallon limit, containing 1,000 gallons more than the limit allowed based on the theoretical, rather than actual, volume of the barrels. However, defendant believed that there were approximately 40,000 gallons of actual waste on site.

Defendant then contacted his supervisor, Douglas Fischer, and informed him what the inventory had shown and what defendant believed the actual volume of waste was. Fischer instructed defendant that the site no longer used an actual volume count because it would be too difficult to explain to regulatory authorities. Fischer

told defendant to make sure that the theoretical volume was under 55,000 gallons. Defendant further testified that Fischer told him that he had better get the theoretical volume underneath 55,000 gallons or defendant would lose his job.

Defendant then met with Bajovich and Davis and discussed ways to bring the plant within the 55,000-gallon theoretical limit. Bajovich suggested changing the accumulation start date stamped on each barrel of waste so that it appeared that the waste had been on site less than 90 days and therefore not counted as inventory under the regulations.

Bajovich and Davis then proceeded to make the new, false labels. Defendant, Davis and Bajovich then walked through the storage facility and picked out drums from which to remove the old labels and place the new falsified labels upon. Thereafter, defendant, Davis and Bajovich then placed the false labels on the containers.

Almost immediately thereafter, defendant and his co-workers' activities came to the attention of authorities and the instant criminal proceedings ensued.

## ISSUES PRESENTED FOR REVIEW

On appeal, defendant argues that: (1) the trial court erred in convicting him of making a false material statement concerning hazardous waste because the false statements at issue were not "material" within the meaning of section 44(h)(2) of the Act; (2) the trial court erred in convicting him of unlawful destruction of a hazardous waste record because the labels at issue were not "records" within the meaning of section 44(h)(3) of the Act; and (3) the trial court erred in convicting him of forgery because the false statements at issue were not made with an intent to defraud within the meaning of the forgery statute.

## OPINION

■ We now turn to defendant's contention that the trial judge erred in convicting him of making a false material statement concerning hazardous waste because the false statements at issue where not "material" within the meaning of section 44(h)(2) of the Act. Section 44(h)(2) of the Act provides as follows:

"(2) Any person who knowingly makes a false material statement or representation in any label, manifest, record, report, permit or license, or other document filed, maintained or used for the purpose of compliance with this Act in connection with the generation, disposal, treatment, storage, or transportation of hazardous waste commits a Class 4 felony. A second or any subsequent offense after conviction hereunder is a Class 3 felony." Ill. Rev.

Stat. 1991, ch. 111½, par. 1044(h)(2) (now 415 ILCS 5/44(h)(2) (West 1994)).

Thus, to convict defendant under section 44(h)(2), the State was required to prove that the false labels were "material." Materiality is a question of law for the court to determine. (See *United States v. Self* (10th Cir. 1993), 2 F.3d 1071, 1083 (discussing materiality under Federal environmental law); *People v. Olinger* (1993), 245 Ill. App. 3d 903, 907, 615 N.E.2d 794 (discussing materiality under Illinois' perjury statute).) In *United States v. Self* (10th Cir. 1993), 2 F.3d 1071, the Federal appeals court examined materiality under the Resource Conversation and Recovery Act (see 42 U.S.C. § 6901 *et seq.* (1988)) and held that materiality depends on whether the statement will have a tendency to influence an action of the Federal Environmental Protection Agency. We believe the *Self* court's definition of materiality apropos to section 44(h)(2). Thus, the relevant inquiry in the case *sub judice* is whether the falsified labels had a tendency to influence an action of IEPA.

The thrust of defendant's argument of this issue is that his act of falsifying the labels was in no way "material" because CWM was at the time, regardless of defendant's actions, in compliance with the 55,000-gallon limit set by the consent decree. Thus, defendant asserts that his alteration of the labels did not and could not induce IEPA to act in any way differently towards CWM. We could not disagree more.

We fail to perceive how the consent decree is relevant in this case to proving anything other than defendant's motive, *i.e.*, the loss of defendant's job if he failed to keep the plant within the decree's limit. Defendant was convicted of violating the Act and not the consent decree. Our reading of the Act fails to locate any provision providing that consent decrees are the benchmark against which to measure materiality.

We believe the false labels were material for two separate and independent reasons. First, it is central to the IEPA's mission that it be able to fulfill its "duty to collect and disseminate such information, acquire such technical data, and conduct such experiments as may be required to carry out the purposes of [the] Act, including ascertainment of the quantity and nature of discharges from any contaminant source and data on those sources, and to operate and arrange for the operation of devices for the monitoring of environmental quality." (Ill. Rev. Stat. 1991, ch. 111½, par. 1004(b) (now 415 ILCS 5/4(b) (West 1994)).) Because of the 80 to 100 false labels, the disclosed quantity of the hazardous waste was incorrect, as was the age or nature of such waste. Consequently, defendant's actions had more

than a tendency to thwart IEPA's ability to perform one of the primary duties assigned to it by the General Assembly, collecting and disseminating accurate information concerning hazardous waste. Second, due to the false labels, IEPA may not have been alerted to mishandled or unaccounted-for hazardous waste and, therefore, defendant's misstatements had a tendency to forestall IEPA investigation. (See *Self*, 2 F.3d at 1084.) Accordingly, we find no error in the trial court's entry of a conviction on the charge of violating section 44(h)(2).

■ Next, defendant posits that the circuit court erred in convicting him of the unlawful destruction of a hazardous waste record because the labels at issue were not "records" within the meaning of section 44(h)(3) of the Act. We agree.

In interpreting a disputed provision of a statute a court should first consider the statutory language itself as the best indication of the drafters' intent. (*Hayes v. Mercy Hospital & Medical Center* (1990), 136 Ill. 2d 450.) "Terms which are unambiguous, when not specifically defined, must be given their plain and ordinary meaning." (*People ex rel. Village of McCook v. Indiana Harbor Belt R.R. Co.* (1993), 256 Ill. App. 3d 27, 29.) If possible, every word, clause or sentence of a statute must be applied in a way that no word, clause or sentence is rendered superfluous. (*Kozak v. Retirement Board of the Fireman's Annuity & Benefit Fund* (1983), 95 Ill. 2d 211, 216.) Further, the General Assembly's intent must be garnered from a review of the entire statutory plan. (*Cullen v. Retirement Board of the Policeman's Annuity & Benefit Fund* (1995), 271 Ill. App. 3d 1105.) In addition, "criminal statutes are to be strictly construed in favor of the accused." *People v. Christensen* (1984), 102 Ill. 2d 321, 328.

Section 44(h)(3) provides as follows:

> "Any person who knowingly destroys, alters or conceals any record required to be made by this Act in connection with the disposal, treatment, storage, or transportation of hazardous waste, commits a Class 4 felony. A second or any subsequent offense after a conviction hereunder is a Class 3 felony." Ill. Rev. Stat. 1991, ch. 111½, par. 1044(h)(3) (now 415 ILCS 5/44(h)(3) (West 1994)).

Clearly, section 44(h)(3) makes no specific reference to a "label" but rather only to the word "record." However, the subparagraph immediately preceding section 44(h)(3), section 44(h)(2), as discussed *supra*, prohibits making "a false material statement or representation in any label, manifest, record, report, permit or license, or other document filed, maintained or used for the purpose of compliance with this Act." (Ill. Rev. Stat. 1991, ch. 111½, par. 1044(h)(2) (now 415 ILCS 5/44(h)(2) (West 1994)).) Surely, had the General Assembly

wished to proscribe the destruction of a label in as comprehensive a regulatory scheme as the Act, it could have easily employed the term in section 44(h)(3) as it did in section 44(h)(2), where it differentiated between labels and records. It did not do so. Accordingly, defendant's conviction for the unlawful destruction of a hazardous waste record is reversed.

■ Still to be considered is defendant's argument that the trial court erred in convicting him of forgery because the false statements at issue were not made with an intent to defraud within the meaning of the forgery statute. We disagree.

Section 17—3 of the Criminal Code of 1961, the forgery statute, provides, in pertinent part, as follows:

"(a) A person commits forgery when, with intent to defraud, he knowingly:

(1) Makes or alters any document apparently capable of defrauding another in such manner that it purports to have been made by another or at another time, or with different provisions, or by authority of one who did not give authority; or

(2) Issues or delivers such document knowing it to have been thus made or altered; or

(3) Possesses, with intent to issue or deliver, any such document knowing it to have been thus made or altered.

(b) An intent to defraud means an intention to cause another to assume, create, transfer, alter or terminate any right, obligation or power with reference to any person or property.

(c) A document apparently capable of defrauding another includes, but is not limited to, one by which any right, obligation or power with reference to any person or property may be created, transferred, altered or terminated." Ill. Rev. Stat. 1991, ch. 38, par. 17—3 (now 720 ILCS 5/17—3 (West 1994)).

In the instant case it is clear to us that defendant, when he falsified the labels, intended to defraud IEPA by causing it to assume a lower amount of hazardous waste was on site than there actually was and, therefore, he affected IEPA's right to monitor and regulate the hazardous waste at the Stony Island plant. Consequently, we find no error on this point.

In light of the foregoing, the judgment of the circuit court of Cook County is affirmed in part and reversed in part.

Judgment affirmed in part and reversed in part.

RIZZI and CERDA, JJ., concur.