NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 210510-U

NO. 4-21-0510

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 6, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | De Witt County |
| THOMAS J. ATCHISON, | ) | No. 20CF89 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Karle E. Koritz, |
| | ) | Judge Presiding. |

---

JUSTICE LANNERD delivered the judgment of the court.
Justices Harris and Steigmann concurred in the judgment.

**ORDER**

¶ 1       *Held:* The State presented sufficient evidence for a rational trier of fact to convict defendant of perjury. Therefore, we affirm the trial court's judgment.

¶ 2       In April 2021, defendant, Thomas J. Atchison, was convicted of perjury (720 ILCS 5/32-2(a) (West 2020)) after a bench trial. In May 2021, the trial court sentenced defendant to 30 months in the Department of Corrections (DOC). Defendant appeals, arguing his conviction for perjury should be reversed because the State failed to prove his guilt beyond a reasonable doubt. We affirm the trial court's judgment.

¶ 3                              I. BACKGROUND

¶ 4       In October 2020, defendant filed a motion to reduce his bail in De Witt County case No. 20-CF-66. During a November 2020 hearing on his motion to reduce bail, defendant testified he was unable to post the bond currently set. He requested that the trial court reduce his bond to

$30,000 because he believed he could post $3000. On cross-examination, defendant acknowledged he testified at a prior hearing that he was expecting a settlement check from DOC in the amount of $6413. However, defendant claimed he used the $6413 as a payment on a $7000 debt he owed his father. Defendant then specifically testified his civil attorney, Louis Meyer, sent the settlement check directly to his father's attorney and defendant did not personally receive the check:

"Q. So Mr. Meyer sent [the check] to your father's lawyer; is that what you're saying?

A. That's what I was told.

Q. Okay. So Mr. Meyer did not send it to you?

A. No."

The trial court then directly questioned defendant about the settlement check, and defendant provided the following responses:

"Q. You were asked how much you received as part of a lawsuit with [DOC], and you said 6413. Is that $6413?

A. Correct, Your Honor.

* * *

Q. And that was sent to your father's attorney?

A. Yes, sir."

On redirect examination, defendant testified his father's attorney, Bryce Lynch, had him sign a document, which was "a statement that I owed [my father] the money and that it was his money."

¶ 5        After hearing testimony and argument, the trial court denied defendant's motion to reduce bail. In its ruling, the court noted multiple factors it considered when denying defendant's motion, including the amount of bail necessary to reasonably assure defendant's appearance, the

safety of the community, the nature and circumstances of the charged offense, defendant's likelihood of compliance on bond, and defendant's financial resources.

¶ 6    Later that same day, the jail administrator listened to defendant's jail phone calls and overheard defendant discussing the settlement check. Defendant stated he had the settlement check in his possession and did not want the jail staff to know about it. Defendant planned to put the check in an envelope to his father's attorney but mark the envelope "legal mail" so the jail staff would not open it. The next day, pursuant to a search warrant, a correctional officer seized a sealed envelope in the jail's outgoing mail addressed to Bryce Lynch with a return address for defendant. Pursuant to the search warrant return, the correctional officer took this sealed envelope to the trial court and observed the court open it. The envelope contained a check in the amount of $6413.86 made payable to defendant.

¶ 7    On November 16, 2020, the State charged defendant in this case (De Witt County case No. 20-CF-89) by information with perjury (720 ILCS 5/32-2(a) (West 2020)), alleging as follows:

> "Defendant, while testifying under oath in a hearing on his motion to reduce bail in De Witt County case number 20-CF-66, testified that he had not personally received a settlement check and that said check had been previously sent by his settlement attorney, Louis Meyer, to the attorney of his father, Bryce Lynch, and that Bryce Lynch had previously forwarded the check to Defendant's father, knowing said statement to be false."

¶ 8    In March 2021, defendant waived his right to a jury trial. At defendant's bench trial in April 2021, the State presented three stipulations for the trial court to consider in lieu of in-person testimony from correctional officers Kody Mair and Joshua Becker and attorney Louis

Meyer. Defense counsel agreed the court could consider the stipulations and the court indicated it would consider the stipulations. According to the stipulations, Mair heard defendant's testimony at the November 2020 hearing and immediately reported it to the jail administrator. The next day, pursuant to a search warrant, Becker seized an envelope from the jail's outgoing mail with defendant's return address, addressed to "Brice [*sic*] Lynch," and marked "legal mail." Becker then took this sealed envelope to the court. He observed the court open the envelope, pursuant to the search warrant return, and find a check in the amount of $6413.86 payable to defendant. Meyer, defendant's attorney from the civil lawsuit against DOC, issued a settlement check in the amount of $6413.86 directly to defendant in October 2020 and did not send the check to anyone else. The State then introduced a certified copy of the transcript from the November 2020 hearing.

¶ 9        The State called attorney Bryce Lynch, who testified he never received a check from defendant or defendant's attorney. On redirect examination, Lynch testified he represented defendant's father and prepared a document titled "Irrevocable Assignment of Interest," whereby defendant assigned his interest in the settlement check to his father. This assignment was admitted as defendant's exhibit No. 1. The assignment was signed by defendant and notarized by Lynch's assistant. However, defendant's father had not signed it. Lynch testified he believed this document was legally binding.

¶ 10       At the close of the State's case, defendant moved for a directed verdict on the basis the State had not proved his false statement was material. Specifically, defendant argued his statement was not material because (1) he did not prevail on his motion to reduce bail and (2) the check did not affect his financial situation because it was assigned to his father. Defendant cited multiple cases to support his position, including *Taylor v. Police Board*, 2011 IL App (1st) 101156, 960 N.E.2d 750, *People v. Acevedo*, 275 Ill. App. 3d 420, 656 N.E.2d 118 (1995), and *People v.*

*Olinger*, 245 Ill. App. 3d 903, 615 N.E.2d 794 (1993). After hearing arguments, the trial court denied defendant's motion for a directed verdict, specifically noting the test for materiality is "whether the statement tends to disprove or prove an issue in the case" and "one of the issues [at the hearing on defendant's motion to reduce bail] was how much could the Defendant post to secure his release, that being a factor for the Court to consider." As to defendant's contention that his check was subject to an agreement with his father, the court found it had no evidence of the terms or rights under the purported May 15 agreement referenced in defendant's exhibit No. 1. As such, the court concluded it was not aware of any contract between defendant and his father. Subsequently, the court considered whether the "Irrevocable Assignment of Interest" of the DOC settlement check was legally binding or "simply a vehicle so that funds could be transferred to" defendant's father. The court determined the assignment of interest was neither a contract nor irrevocable. As such, considering the evidence in the light most favorable to the State, the court declined to hold that defendant was "legally bound to turn the check over to his father." As a result, the court denied defendant's request for a directed verdict.

¶ 11        Defendant testified on his own behalf that he owed his father $7000, and the "Irrevocable Assignment of Interest" was a contract between himself and his father. Defendant further testified defendant's exhibit No. 2 was a statement he wrote in jail, in which he agreed to give his parents the settlement check from DOC to partially satisfy debts he owed them. Defendant's exhibit No. 2 is the May 15, 2020, agreement referenced in the assignment document (defendant's exhibit No. 1). After defendant testified, the defense rested.

¶ 12        After closing arguments, the trial court found defendant guilty of perjury. The court found defendant was under oath at the time he made the statement alleged in the information, the statement was false, defendant believed the statement was false when he made it, and the statement

was material. In its decision, the court specifically considered defendant's argument that the statement was not material. The court found that the trial court in case No. 20-CF-66 considered defendant's financial circumstances at the November 2020 bail hearing, as required. The court also stated it was reasonable to conclude "defendant knew when he was testifying that [if he] were to say that he had access to $6400 that the Court might reduce bond from $75,000 to $64,000 so the Defendant could post that money." Finally, the court explained the issue at the November 2020 hearing was "how much money could the Defendant post to secure his release, which is one of, if not the primary, issues at a bond hearing."

¶ 13   The trial court rejected defense counsel's argument that defendant owed the settlement money to his father, finding the May 2020 agreement (defendant's exhibit No. 2) was not a contract and the assignment was not irrevocable. The court concluded, "I don't find that the concealment of the Defendant's access to the check in question had no legal effect in this case. I believe that it did. I believe the Court would have considered that, and did consider that, and so I do find that that statement is material."

¶ 14   In April 2021, defendant filed a motion for a new trial, arguing insufficient evidence was presented to establish the materiality element of perjury. In May 2021, the trial court denied defendant's motion and sentenced defendant to 30 months in DOC.

¶ 15   This appeal followed.

¶ 16                                II. ANALYSIS

¶ 17   Defendant argues the State failed to prove him guilty beyond a reasonable doubt of each element of the offense of perjury (720 ILCS 5/32-2(a) (West 2020)) because the State's evidence was insufficient to establish defendant's false statement was material to the issue of his bail. Defendant contends his false statement under oath was not material because (1) he did not

prevail on his bail motion, so the statement did not influence the trier of fact and (2) the check did not affect his financial circumstances because he did not have any legal right to the funds. Consequently, defendant asserts his perjury conviction must be reversed. We disagree.

¶ 18     The State must prove a defendant's guilt beyond a reasonable doubt as to each element of an offense. *People v. Murray*, 2019 IL 123289, ¶ 28, 155 N.E.3d 412. When a challenge is raised regarding the sufficiency of the evidence, the question before this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime beyond a reasonable doubt." *People v. Brown*, 2013 IL 114196, ¶ 48, 1 N.E.3d 888. "This same standard of review applies regardless of whether the defendant receives a bench or a jury trial." *Brown*, 2013 IL 114196, ¶ 48. Further, this court will not reverse a criminal conviction for insufficient evidence "unless the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *People v. Sauls*, 2022 IL 127732, ¶ 52.

¶ 19     Section 32-2(a) of the Criminal Code of 2012 (720 ILCS 5/32-2(a) (West 2020)) states:

> "A person commits perjury when, under oath or affirmation, in a proceeding or in any other matter where by law the oath or affirmation is required, he or she makes a false statement, material to the issue or point in question, knowing the statement is false."

To establish a perjury charge, the State must prove "the defendant made a false statement, that the false statement was material to the issue in question, and that the defendant did not believe the statement to be true." *Olinger*, 245 Ill. App. 3d at 907.

- 7 -

¶ 20         Initially, defendant argues his false statement was not material because it failed to persuade the trial court to grant his motion to reduce bail. "A statement is material when it did influence, or could have influenced, the trier of fact." *Acevedo*, 275 Ill. App. 3d at 423. The materiality test only requires that "the false testimony has a 'natural tendency to influence the trier of fact' on the issue or point in question." *People v. Rutledge*, 257 Ill. App. 3d 769, 771, 629 N.E.2d 233, 234 (1994) (quoting *People v. Powell*, 160 Ill. App. 3d 689, 694, 513 N.E.2d 1162, 1165 (1987)). Moreover, we note "[t]he determination of materiality involves the relationship between an allegedly false statement and the nature of the proceedings at which it is made." *Rutledge*, 257 Ill. App. 3d at 771.

¶ 21         At a hearing involving bail, the defendant's financial situation is at issue because it is one of the factors the trial court must consider in setting bail. 725 ILCS 5/110-5(a) (West 2020). Whether a false statement about a defendant's financial situation in fact persuades the court is not the sole consideration. The materiality test is not outcome determinative. Instead, the question is whether the false statement "*would or could* influence the trier of fact in its deliberations on the issues presented to it." (Emphasis added and internal quotation marks omitted.) *Rutledge*, 257 Ill. App. 3d at 771. As a defendant's financial situation is at issue in any hearing involving bail, any statements regarding finances have a tendency to be material because those statements would or could influence the court in determining the appropriate bail.

¶ 22         In the present case, the State presented sufficient evidence to establish defendant's false statement was material to his bail hearing. The transcript from the November 2020 hearing, which was admitted at defendant's bench trial, indicates the trial court in case No. 20-CF-66 considered defendant's financial circumstances when determining whether to grant defendant's motion to reduce bail. During the November 2020 bail hearing, the court itself directly questioned

defendant about the settlement check. The court gathered information about the settlement check and whether it was in defendant's possession. Additionally, when providing its ruling at the hearing, the court explicitly stated,

> "The Court considers the Defendant's employment and financial resources. *** You had, at one time, access to $6413. You made the decision not to apply that to bond but, rather, to pay your father. That was not ordered by the Court to do that. That was entirely your choice, and you paid the attorney for your father."

¶ 23    Based on the November 2020 hearing transcript, it is clear the trial court considered the settlement check, or lack thereof, as part of defendant's financial resources and, consequently, material to defendant's financial resources. Thus, defendant's argument that his false statement was not material because the court denied his motion to reduce bond is without merit.

¶ 24    Next, defendant argues his possession of the check was not material because he lacked the legal right to the funds. Attorney Lynch testified he created the "Irrevocable Assignment of Interest" and believed it to be a *legally enforceable* assignment of defendant's interest in the settlement check. The assignment was signed by defendant and notarized by Lynch's assistant. However, defendant's father had not signed it. Although titled "Irrevocable Assignment of Interest," Lynch did not testify he believed the assignment was irrevocable. The "assignment" was admitted into evidence for the trial court's consideration. Defendant testified he personally drafted the May 2020 agreement, defendant's exhibit No. 2, while in custody and meant it to be a "statement and agreement" between him and his father. During his testimony, defendant acknowledged on cross-examination no court order required him to pay the settlement funds to his father. Moreover, defendant never testified he believed the "Irrevocable Assignment of Interest" was irrevocable.

¶ 25    The trial court considered defendant's claim of an existing agreement with his father and the irrevocability of the assignment. The court stated:

> "I cannot find, and don't find, that the irrevocable assignment was, in fact, irrevocable based on the facts present here in this case before the Court.
>
> Defendant's Exhibit No. 2 does not appear to be a written agreement at all. It's certainly not a contract. It's only signed by one party and written by one party. It's essentially an acknowledgement of a debt that is owed or a confession that he owes money."

Here, based on the evidence presented, the court determined the assignment was not irrevocable and no contract existed between defendant and his father requiring defendant to pay the settlement funds to his father.

¶ 26    We note defendant's appellant's brief to this court provided no real analysis or authority explaining why he contends the trial court was wrong as a matter of law when it found the assignment was not irrevocable. While defendant did provide some analysis and authority on this issue within his reply brief, Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) states an appellant brief shall contain:

> "the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on. Evidence shall not be copied at length, but reference shall be made to the pages of the record on appeal where evidence may be found. Citation of numerous authorities in support of the same point is not favored. Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."

¶ 27          As a result, defendant forfeited any argument the trial court erred in determining the assignment was not irrevocable. Thus, defendant has failed to establish his possession of the check was not a material factor which either would or could have influenced the court when determining whether to grant defendant's motion to reduce his bail.

¶ 28          Defendant next relies on *Olinger* to suggest the check would not be material even if defendant admitted his physical possession of the same because it would not have changed the outcome of the bail hearing. This is speculation on defendant's part. Regardless, once again, defendant misconstrues the test for materiality, suggesting it is outcome determinative.

¶ 29          This case is distinguishable from *Olinger*. In *Olinger*, 245 Ill. App. 3d at 907-908, the amount of funds omitted from the defendant's financial affidavit was so small that, even if disclosed, the defendant would still have been found indigent. In contrast, the trial court's determination here that no contract existed and the assignment was not irrevocable means defendant's physical possession of the check meant he could acquire the funds promised in the check. Defendant's ability to access these funds directly affected the amount he could post to secure his release. The false statement defendant made *would or could* have influenced the trial court at the November 2020 bail hearing. See *Rutledge*, 257 Ill. App. 3d at 771. Defendant's access to the settlement funds was part of his available financial resources and were material and at issue in the bail hearing. It is possible the court may have reduced defendant's bond to $64,000 had the court known about the settlement check.

¶ 30          When reviewing all the evidence in the light most favorable to the State, a rational trier of fact could have found the State proved the materiality element of perjury beyond a reasonable doubt.

¶ 31                                    III. CONCLUSION

- 11 -

¶ 32    For the reasons stated, we affirm the judgment of the trial court.

¶ 33    Affirmed.